**Opinion issued November 17, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00169-CV

————————————

**STEWART BEACH CONDOMINIUM
HOMEOWNERS ASSOCIATION, INC., Appellant**

**V.**

**GILI N PROP INVESTMENTS, LLC;
BARAK RESHEFF; BARYO INVESTMENTS, LLC;
SIMCA HELED; AHUVA HALED; PAVEL
(LEONID) GORBULSKY; AND RAMI BARNEA, Appellees**

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Case No. 14-CV-1266**

---

# O P I N I O N

Four condominium owners obtained temporary injunctions to prohibit

Stewart Beach Condominium Homeowners Association from foreclosing on their

condominiums. Stewart Beach appeals the trial court's denial of its motion to dissolve the four temporary injunctions.[1] Stewart Beach argues: (1) the temporary injunction orders do not meet the requirements of Texas Rule of Civil Procedure 683; (2) Gili N Prop Investments, LLC, Baryo Investments LLC, Rami Barnea, Simca and Ahuva Heled, and Pavel Gorbuslski (collectively referred to as the "homeowners") did not meet their burden to prove the elements of a temporary injunction; and (3) the homeowners had "unclean hands" and thus were barred from seeking temporary injunctions. The homeowners argue that we do not have jurisdiction over this appeal. We affirm.

## Background

Stewart Beach is a homeowner's association. It charged the homeowners assessments for community maintenance ranging from $3,500 to $6,200—assessments that the homeowners admit they owe. Stewart Beach's demand included an amount for its attorney's fees incurred during its assessment-collection efforts. The homeowners contest the amount of the attorney's fees demanded, claiming the fees were excessive, unconscionable, and unauthorized by the association agreement. They paid neither the assessment nor the attorney's fee demand. Because the homeowners did not pay the amount demanded, Stewart

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2015) (granting courts of appeals jurisdiction over interlocutory appeals of orders "grant[ing] or overrul[ing] a motion to dissolve a temporary injunction")

2

Beach attempted to foreclose on their condominiums. The homeowners sought, and the trial court granted, temporary injunctions to avoid foreclosure.

## A.    Attorney fee agreement

The engagement letter between Stewart Beach and its attorney provides for a hybrid attorney fee consisting of three parts: (1) a flat fee of $75 for "[c]ollection cure letters" and $225 for filing notices of liens; (2) a contingency fee "equal to 20% on all collections"; and (3) an hourly fee of $195 for the attorney's work and $65 for his paralegal's work.

## B.    Attorney's work on the case

Stewart Beach's attorney mailed a form collection cure letter to each of the homeowners. The boilerplate, form letter merely plugged in information he received from his client, Stewart Beach. The attorney also filed liens—again using boilerplate forms—against each of the homeowners. His paralegal prepared these two documents, which the attorney reviewed.

Stewart Beach's attorney demanded in the "collection cure" letter that the homeowners pay his attorney's fees ranging from $1,600 to $2,150. No calculation or description of the time or services was included in the demand letter. Testimony during the temporary-injunction hearing revealed that the fee included: (1) $300 for the two documents prepared by the paralegal, (2) $585 for hourly charges, and

(3) an amount that represents 20% of the uncollected assessments. For all four homeowners, the total demanded for attorney's fees was over $16,000.

## C.     Lawsuit against homeowners

Stewart Beach sued the homeowners for breach of contract and attempted to foreclose on their condominiums. In the homeowners' answer to Stewart Beach's lawsuit, they admitted they owe some assessments but argued that the attorney's fees were excessive. They raised counterclaims for fraudulent liens[2] and excessive demand.[3]

---

[2]     Texas law imposes liability for a fraudulent lien when a person files a lien with:

    (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

    (2) intent that the document . . . be given the same legal effect as a court record . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

    (3) intent to cause another person to suffer:
    (A) physical injury;
    (B) financial injury; or
    (C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (West Supp. 2014).

[3]     The excessive demand doctrine tempers the right of the claiming party to recover attorney's fees. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 417–18 (Tex. App.—Corpus Christi 2001, pet. denied); *Allstate Ins. Co. v. Lincoln*, 976 S.W.2d 873, 878 (Tex.App.—Waco 1998, no writ). This doctrine recognizes that, "[i]f the claiming party makes an unreasonable demand, the other party should not be forced to pay the demand or else risk suffering the opposing party's attorney's fees." *Wayne*, 52 S.W.3d at 417–18; *see Fire & Cas. Ins. Co. of Connecticut v. Buslease, Inc.*, No. 08-01-00277-CV, 2002 WL 1301570, at *2 (Tex. App.—El Paso June 13, 2002, pet. denied) (mem. op., not designated for publication). If the trial court determines that the attorney's fees Stewart Beach demanded were excessive and therefore "unreasonable" or demanded "in bad faith," the trial court could limit the award of attorney's fees. *Oyster Creek Fin. Corp. v. Richwood*

## D.    Temporary injunction

After an evidentiary hearing, which included testimony by Stewart Beach's attorney on his fees and testimony by the homeowners' expert that the fees were "clearly excessive," "unreasonable," and "unconscionable," the trial court granted four temporary injunctions, one for each of the four units.

Each of the orders granting a temporary injunction found that "there are unpaid assessments against the property" and that the "reasonable and necessary attorney's fees and costs . . . are $300"—the amount set forth in the engagement letter for the demand letter and lien. The orders also found that the "owner will suffer imminent and irreparable harm if this Court does not enjoin the foreclosures of the Property." The orders set a bond at the amount of the assessment plus the $300 in attorney's fees.

---

*Invs. II, Inc.*, 176 S.W.3d 307, 318 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Alford v. Johnston*, 224 S.W.3d 291, 298–99 (Tex. App.—El Paso 2005, pet. denied); *Pennington v. Gurkoff*, 899 S.W.2d 767, 772 (Tex. App.—Fort Worth 1995, writ denied). But, if the trial court does not find the original fee demand to be excessive, this continuing controversy subjects the homeowners to claims for the additional attorney's fees in this appeal and for the continued proceedings in the trial court. Thus, the ultimate recovery for attorney's fees could potentially be higher than the original claimed amount because of the accumulating attorney's fees. *See Thomas v. Lake Cove Cmty. Ass'n, Inc.*, No. 14-13-00173-CV, 2014 WL 1004525 (Tex. App.—Houston [14th Dist.] Mar. 13, 2014, no pet.) (mem. op.) (noting that association initially spent $2,314 in attorney's fees but after trial recovered $4,952 in attorney's fees because of additional services).

Stewart Beach then filed a motion to dissolve the temporary injunctions, which the trial court denied. Stewart Beach now appeals the trial court's denial of its motion to dissolve.

## Standard of Review

We review a trial court's decision to grant or deny a motion to dissolve a temporary injunction under an abuse of discretion standard. *Conlin v. Haun*, 419 S.W.3d 682, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court has broad discretion in denying or granting such a motion. *Id.* "A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *Id.* (citing *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). We only review the validity of the temporary injunction order; we do not review the merits of the underlying case. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We review the evidence in the light most favorable to the district court's ruling, drawing all legitimate inferences from the evidence and deferring to the district court's resolution of conflicting evidence. *Id.* A district court abuses its discretion if it misapplies the law to established facts. *Id.* There is no abuse of discretion as long

as some evidence reasonably supports the district court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

When a party challenges a finding of fact, like Stewart Beach does here, the finding is not determinative unless it is supported by the record. *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We review the sufficiency of the evidence to determine whether the trial court abused its discretion in making the finding. *Id.* The "legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion." *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### Jurisdiction

The homeowners argue, "The Court of Appeals is without Jurisdiction . . . because the Notice of Appeal was filed more than 20 days after the Orders complained of, and the subsequent Motion to Dissolve the Injunctions raised [no] new grounds and was ineffective to renew appellate jurisdiction."

"The interlocutory appeal of an order denying a motion to dissolve a temporary injunction is an accelerated appeal, and accordingly, the notice of appeal

must be filed within 20 days of the date of the order denying the motion." *Conlin*, 419 S.W.3d at 685. The statute granting us jurisdiction to hear an interlocutory appeal allows an appeal from either an order that "grants or refuses a temporary injunction" or one that "grants or overrules a motion to dissolve a temporary injunction."[4] TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. An appeal "must be filed within 20 days after the judgment or order is signed." TEX. R. APP. P. 26.1(a). The 20-day time period to appeal an order granting or overruling the motion to dissolve a temporary injunction starts on the day of the order appealed—even if that order is not the first order granting or denying such a motion in the lawsuit. *See Conlin*, 419 S.W.3d at 685 (holding appeal was timely because within time period for second—but not first—motion to dissolve).

Stewart Beach appeals the trial court's denial of its motion to dissolve the temporary injunction. It filed the notice of appeal three days after the trial court denied its motion to dissolve—well within the 20-day limit.

---

[4] The homeowners argue that the statute's wording, "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65," indicates the statute only grants us appellate jurisdiction over dissolution of injunctions for damages. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West 2015). We disagree. While the one subsection of Chapter 65 the homeowners cite deals with "injunction[s] enjoining the collection of money," the entirety of the chapter gives a trial court jurisdiction to grant injunctions "of equity . . . if not in conflict with this chapter or other law." TEX. CIV. PRAC. & REM. CODE ANN. §§ 65.001, 65.031 (West 2008). Thus the language "as provided by Chapter 65" refers to any injunction "of equity" and grants us jurisdiction to hear an appeal of any such injunction or of a motion to dissolve such an injunction.

8

The homeowners claim that the motion to dissolve the temporary injunction was "pro forma" and "merely reiterates" the arguments against the temporary injunction that Stewart Beach made at the temporary injunction hearing. They cite *City of Houston v. Estate of Jones* in arguing that "merely reiterating" such arguments is "not effective" to "extend the appellate deadline" and contend that the 20 days commenced with the granting of the temporary injunction. 388 S.W.3d 663 (Tex. 2012).

*Estate of Jones* does not support the homeowners for two reasons. First, it dealt with a plea to the jurisdiction. In that case, the City of Houston, two years after it filed its original plea to the jurisdiction, filed a second plea to the jurisdiction containing the same arguments as the original plea. *Id.* at 665. The Texas Supreme Court agreed with the trial court in construing the new "plea" as a motion to reconsider. *Id.* at 666. Because the statute allowing interlocutory appeals did not provide for an appeal of a motion to reconsider a plea to the jurisdiction, the Texas Supreme Court held it did not have jurisdiction over an appeal of the denial of the motion. *Id.* at 667. An order denying a motion to dissolve a temporary injunction is different: the statute authorizing interlocutory appeals specifically allows appeal of such an order—unlike a motion to reconsider a plea to the jurisdiction.

Second, unlike *Estate of Jones*, the motion here raised new grounds for relief. The motion to dissolve argues that the temporary injunction order does not meet the requirements of the Rules of Civil Procedure, specifically the requirement that the order "set forth the reasons for its issuance," and thus, the order is "void" and the trial court had "no discretion to deny a motion to dissolve." These arguments were not raised at the temporary injunction hearing; indeed, such arguments could not have been raised there because Stewart Beach could not challenge the form of the order before it was issued.

Thus, Stewart Beach's appeal is timely and we have jurisdiction over it.

### The Temporary Injunction Order Satisfies the Requirements of Texas Rule of Civil Procedure 683

Stewart Beach argues that the four temporary injunction orders "do not set out the reasons for entry or identify the harm [the homeowners] will suffer if not entered" and thus violate the requirements of Texas Rule of Civil Procedure 683.[5] That rule requires: "Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained; and

---

[5] Stewart Beach also argues that the orders violated Rule 684, which requires the court to "fix the amount of security to be given by the applicant" for a temporary injunction, but Stewart Beach does not give any detail on how that Rule is violated. This "[f]ailure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint." *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

10

. . . shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." TEX. R. CIV. P. 683.

The four orders granting the temporary injunctions, which are identical except for the name of the homeowner and the amount of the assessment and bond, meets the four requirements of Rule 683. First, the orders set forth the reasons for their issuance. The order states "After considering[] the pleadings, testimony, exhibits, [and] other evidence properly before the Court, legal authorities, and the argument of counsel, the Court: FINDS there are unpaid assessments against the Property [and] FINDS the reasonable and necessary attorney's fees and costs incurred by the Association to make the demand to the Owner and file the lien against the Property are $300.00."

Second, the orders identify the harm that the homeowners would suffer if Stewart Beach foreclosed on the condominiums. It states that the trial court "FINDS the Owner will suffer imminent and irreparable harm if this Court does not enjoin the foreclosures of the Property, currently scheduled to occur on Tuesday, January 6, 2015 at 10:00 a.m." The harm of losing one's home "is obvious"; a homeowner would "probably be injured if the property were foreclosed and sold." *Franklin Sav. Ass'n v. Reese*, 756 S.W.2d 14, 15–16 (Tex. App.—Austin 1988, no writ).

Third, the order sets out the act to be restrained: it "ORDERS [that Stewart Beach be] . . . TEMPORARILY ENJOINED from conducting any foreclosure by private sale or otherwise of the Property until and pending signature and entry of final resolution of this suit or until further order of this Court."

Fourth, the order sets a date for the trial on the merits.[6] Thus, the orders granting the temporary injunctions in this case meet the requirements of Rule 683. We overrule Stewart Beach's first issue.

## Temporary Injunction

A temporary injunction "preserve[s] the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204. The "status quo" is the "last, actual, peaceable, noncontested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (internal quotation marks omitted). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a

---

[6] This differs from the cases Stewart Beach cites in which the appeals court held that the temporary injunction order did not meet the requirements of Rule 683 because the order did not set a date for the trial on the merits. *See Interfirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (holding order violated Rule 683 because it did not set date for trial on merits); *Conlin*, 419 S.W.3d at 687 (same). The two other cases Stewart Beach cites are not helpful to deciding this issue because neither discusses the requirements of Rule 683. *See Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334 (Tex. 2000) (holding that order granting temporary injunction is appealable); *Tex. State Optical v. Wiggins*, 882 S.W.2d 8 (Tex. App.—Houston [1st Dist.] 1994, no writ) (holding trial court applied wrong law to facts in case).

probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204.

Stewart Beach challenges the second and third elements: it argues that it is "impossible" for the homeowners to obtain relief and that the homeowners would not suffer an irreparable injury if the foreclosures were to proceed because other remedies exist for them.

## A. Probable right to the relief sought

Stewart Beach argues, "It is impossible for [the homeowners] to show they will succeed on the merits of the case because they confess in their pleadings they owe . . . the amount [Stewart Beach] pled."

When a trial court holds a hearing on a temporary injunction, the only question "is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. The ruling on the temporary injunction may not be used to obtain an advance ruling on the merits." *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981) (internal citations omitted). On appeal, the question "is whether the trial court abused its discretion in granting or denying the temporary injunction." *Id.* Because the trial court cannot give an advance ruling on the merits, "the applicant is not required to establish that she will prevail on final trial . . . ." *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (internal citations omitted).

"[C]ourts are often particularly careful when it comes to the element of 'probable right of recovery,' sometimes referred to as 'likelihood of success on the merits' . . . ." *Intercontinental Terminals*, 354 S.W.3d at 897. This element "seems to infringe upon two well-engrained judicial prohibitions: against advisory opinions and against forming opinions about the merits of the case before the conclusion of the evidence." *Id.* The "probable right of recovery" is a "term of art" in the law of temporary injunctions. *Id.* "[T]he applicant for [a] temporary injunction [need not] offer evidence and persuade the judge to find from that evidence the adjudicative facts necessary for the applicant to prevail on the merits, based on probabilities." *Id.* (internal citations omitted). A temporary injunction hearing is not a "*mini* trial" in which "the judge predicts the applicant's chances of success at the real trial, based upon the judge's estimate of where the truth probably lies concerning the adjudicative facts and the law made applicable thereto by the pleadings in the case." *Id.* (internal citations omitted). "[T]o show a probable right of recovery," the party applying for a temporary injunction, "must plead a cause of action and present some evidence that tends to sustain it. The evidence must be sufficient to raise a bona fide issue as to the applicant's right to ultimate relief." *Id.* (internal citations and quotation marks omitted).

Thus, to "show a probable right of recovery," the homeowners must "present some evidence that tends to sustain" their excessive-demand claim that the

attorney's fees were excessive and were either sought in bad faith or were unreasonable. *Cameron v. Bell*, No. 13-01-767-CV2003, WL 253609, at \*2 (Tex. App.—Corpus Christi Feb. 6, 2003, no pet.); *Intercontinental Terminals*, 354 S.W.3d at 897. The trial court made a finding that, at the time the demand letter was sent to the homeowners, "reasonable and necessary attorney's fees and costs . . . [were] $300." The testimony at the temporary-injunction hearing provided substantial support for this finding and no contrary evidence was presented.

When a contract between a lawyer and his client contains a provision setting the amount of attorney's fees, that provision establishes a presumption that the amount is reasonable between the client and the attorney—but this presumption does not apply to a third party from whom fees are sought, like the homeowners. *See Leal v. Leal*, 628 S.W.2d 168, 170–71 (Tex. App.—San Antonio 1983, no writ) (holding that agreement between plaintiff and attorney did not establish presumption of reasonableness when plaintiff attempted to recover attorney's fees from defendant).

Expert testimony on attorney's fees is necessary if the fees are disputed. The homeowners presented expert testimony that the original demanded attorney's fees were unreasonable. Stewart Beach's attorney offered factual testimony regarding his fees. But, other than the attorney's misinterpretation of a Fourteenth Court of Appeal's decision, which we discuss below, Stewart Beach offered no expert

15

testimony on the reasonableness of the demanded attorney's fee or the number of hours expended on the tasks. In most cases, the attorney who testifies in support of the requested fees should quantify the number of hours and describe the tasks performed, supported by appropriate billing records or other documentary evidence. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). In determining the reasonableness of the fee, the trial court must consider (1) the number of hours the attorney reasonably worked on the claim and (2) the reasonable hourly rate for that work. *Id.*

At the hearing, however, Stewart Beach's attorney generally described the work necessary to complete the demand letter and lien notice and work he did *after* sending the demand letter. This evidence does not support the original fee demand in excess of the flat fee. He did not provide any timesheets or other evidence of the number of hours he reasonably worked on the demand letters. To the extent the work corresponded to any aspect of the hybrid fee arrangement, it appears to correspond to the flat fees that would be charged, which is the amount found by the trial court to be the reasonable amount of fees through the date the demand letter was sent.

### 1. Combination of hybrid fee

The homeowners' expert used the attorney's fee demand sent to one of the four homeowners, Simca and Ahuva Heled, to illustrate the unreasonableness of

Stewart Beach's attorney's hybrid fee.[7] The Heleds owed Stewart Beach $3,616.33 in assessments. In addition to the amount due for assessments, Stewart Beach's demand letter demanded $1,665.27 in attorney's fees (roughly 44% of the assessments owed) without any supporting calculation. During the temporary-injunction hearing, the homeowners' attorney asked Stewart Beach's attorney how much of that $1,665.27 was for his hourly fees. He responded, "I don't know. . . . It was $75 for the standard cure notice. I bill $225 for liens . . . . Then there's 20 percent of the delinquent amount collection fee . . . ." That testimony leaves about $642 of remaining fees.[8]

## 2. Flat Fee

The only evidence presented to the trial court regarding the reasonableness of Stewart Beach's fees when it issued the temporary injunction is the flat fee of $75 for writing the collection letter and $225 for filing the lien. The homeowners'

---

[7] The chart below summarizes the demanded fees:

| Flat Fee | Contingent Fee (20% of $3,616.33) | Remaining Fees | Total |
|----------|-----------------------------------|----------------|-------|
| $300 | $723.27 | $642 | $1,665.27 |

[8] Even if we assume the flat fee was only intended to cover the paralegal's time and that the attorney would also charge an hourly fee on top of the flat fee (a fee arrangement that is not clearly set forth in the engagement letter), to justify this amount at his $195 hourly rate, Stewart Beach's attorney would have to present evidence that he spent 3.25 hours reviewing a two-page form letter and a two-page notice of lien and did so for each form letter sent to the homeowners. No such evidence was presented.

expert testified that these flat fees were "reasonable." The trial court set the reasonable attorney's fees in the bond at $300—presumably to cover Stewart Beach's attorney's flat fee. But Stewart Beach demanded attorney's fees much higher than that. Therefore, we look to the other portions of the hybrid fee arrangement for support.

### 3. Hourly fee

Stewart Beach's attorney testified that he charges $195 an hour. The homeowners did not challenge the attorney's hourly rate. Their expert did, however, testify that charging an hourly rate on top of the flat fee and on top of the contingency fee was "clearly excessive," not "reasonable," and "unconscionable." Stewart Beach offered no testimony or billing records to substantiate an hourly-fee charge beyond the flat fee already charged for the work the attorney described he performed.

Based on this lack of evidence, the trial court did not abuse its discretion in finding that the homeowners had a likelihood of success on the merits of their challenge to Stewart Beach's attorney's hourly-rate fees over and above the flat fee.

### 4. Contingency Fee

If the contract between the attorney and the client provides for a contingency fee, attorney's fees cannot be recovered based solely on the evidence of the fee

agreement. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Instead, the factfinder must determine the reasonableness of a contingency fee in a specific dollar amount. *Id.* at 819. When the factfinder determines the reasonableness of the fee, it must consider, among other factors, the uncertainty of collection before the legal services have been rendered. *Id.* at 818. Even if the contingent fee is reasonable from the standpoint of the client and the attorney, the fee is not necessarily reasonable when the attorney attempts to collect from a third party, like the homeowners. *Id.*

Stewart Beach's attorney provided no evidence that the specific dollar amount collected on the basis of the 20% contingency fee is reasonable.[9] Instead, the attorney offered two rationales for the fee: (1) it was the fee set forth in his engagement letter and (2) it was the same percentage contingency fee approved by the Court of Appeals in *Schwartzott v. Marvilla*, 390 S.W.3d 15 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

The first rationale is not persuasive: as previously discussed, the attorney's fee contract is not binding on a third party.

_____

[9]     Although Stewart Beach argues that the 20% fee is not a contingency fee, the engagement letter suggests otherwise. The attorney's contract reads that he "will be entitled to a flat fee equal to 20% on all collections." If a homeowner does not pay the assessment, no collection occurs and thus Stewart Beach would not owe their attorney the 20%. Thus, the fee is contingent on collection and is a contingency fee. *See Arthur Andersen*, 945 S.W.2d at 818 (referring to contingency fees as fees that "compensate the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost").

The second rationale is based on a misinterpretation of *Schwartzott* on three levels. First, the attorney's fee there was 10%—not 20%. *Id.* at 21. Second, it was part of a two-fold—not three-fold—hybrid agreement that included a flat and contingency, but not hourly, fee. *Id.* Third and most importantly, the court did not "approve" the fee; it held, based on the limited record and expert testimony before it, that the trial court did not err in awarding the attorney's fees. *Id.*

In contrast, the homeowners provided expert testimony that Stewart Beach's attorney's contingency fee was unreasonable. The expert testified that charging a contingency fee in addition to the hourly rate constituted an excessive fee. Their expert testified that this fee arrangement was particularly unreasonable given that the homeowner association assessments were comparatively small dollar amounts compared to the value of the condominiums and were secured by a lien on the condominium. This testimony indicates that the "uncertainty of collection" (one of the *Arthur Andersen*[10] factors for determining the reasonableness of contingency fees) was relatively low, weighing against the reasonableness of a contingency fee on top of the flat fee and the hourly fee.

Based on the testimony at the hearing, the homeowners presented evidence in support of their claims of a fraudulent lien and excessive demand and established a "bona fide issue as to the applicant's right to ultimate relief."

---

[10]    945 S.W.2d at 818.

*Intercontinental Terminals*, 354 S.W.3d at 897. This "bona fide issue" justified the trial court's decision to grant the temporary injunction to "maintain the status quo" until a trial on the merits could determine whether the attorney's fees were reasonable.

Stewart Beach argues that the homeowners' failure to pay the assessments that they admit they owe precludes them from benefiting from a temporary injunction to stop foreclosure. It is true that "claimed confusion concerning the amount of the payment required to avoid foreclosure is not in itself grounds for an injunction. . . . [A] debtor seeking equitable relief from a foreclosure sale must first tender the full sum of the admitted debt." *Ginther-Davis Ctr., Ltd. v. Houston Nat'l Bank*, 600 S.W.2d 856, 864 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e). If a party admits to owing part of a debt, it must make "an unconditional offer . . . [of] a sum not less in amount than that due." *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963).

The requirement for a debtor to tender the amount owed, however, does not require "that the money was to be brought into Court, or tendered as a condition precedent to the granting of relief;" the debtor must show only "a readiness and willingness to pay" and act "in good faith." *Poff v. Rollinsford Sav. Bank*, 105 S.W.2d 782, 783 (Tex. Civ. App.—Amarillo 1937, no writ). In *Poff*, the debtor "asked the court to determine their indebtedness to appellees and offered to pay the

21

amount thereof when determined." *Id.* This offer to pay the full amount determined by the factfinder constituted a sufficient offer "of the full amount owed." *Id.*

Here, the homeowners explicitly state in their pleading that they did not "dispute their obligation to pay appropriate assessments";[11] they disputed the amount of the attorney's fees. During the temporary injunction hearing, one of the homeowners testified that he, representing the other homeowners with delinquent assessments, offered to pay Stewart Beach "the assessments and on top of it [ ] would add 20 percent of [the attorney's] fees." This amount was more than the amount the trial court found was reasonable.[12] In addition to the offer the homeowners made to Stewart Beach, the homeowners posted a bond—"brought [the money] into Court"—for the amount they admit they owed in assessments and the amount the trial court found was a reasonable attorney's fee as a condition of

---

[11]  There is an additional dispute over the amount of assessments that are due. The homeowners argue that "previous assessments may [ ] not have been properly credited" and may have been "improperly applied to [attorney's] fees or otherwise handled in violation of the Bylaws." No evidence was provided at the temporary-injunction hearing to support this claim so the temporary injunction cannot be based on this allegation in the pleadings. *See Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 589–90 (Tex. App.—Texarkana 2004, no pet.) ("No temporary injunction may issue unless the applicant offers competent evidence in support of his or her application to the trial court at the hearing on the temporary injunction . . . .").

[12]  For example, 20% of the $1,665.27 in attorney's fees that Stewart Beach's attorney attempted to charge the Helds would be $333.06—greater than the $300 that the trial court found was reasonable.

the temporary injunction. *Poff*, 105 S.W.2d at 783. This bond protected Stewart Beach's interests.

While the homeowners have not tendered the assessments that they admit they owe to Stewart Beach, the actions taken by the homeowners of (1) offering to pay the admitted debt due and (2) posting a bond as a condition of the temporary injunction satisfy the requirements of Texas law. We hold that the homeowners met the element of "probable right to the relief sought" to obtain the temporary injunction.

## B. Irreparable Injury

Stewart Beach argues that the homeowners are not irreparably harmed because they are "protected from wrongful foreclosure by the redemption provision of the [Texas Uniform Condominium Act] . . . [and] the legal remedy of a lawsuit for wrongful foreclosure . . . ."

A trial court cannot issue an injunction when the party seeking the injunction has a plain and adequate legal remedy. *Int'l Harvester Credit Corp. v. Rhoades*, 363 S.W.2d 397, 399 (Tex. Civ. App.—Austin 1962, no writ). A temporary injunction is, however, appropriate to block foreclosure of real property. *Irving Bank & Tr. Co. v. Second Land Corp.*, 544 S.W.2d 684, 688 (Tex. Civ. App.— Dallas 1976, writ ref'd n.r.e.). "[I]t is obvious that [the property owner] would

probably be injured if the property were foreclosed and sold . . . . " *Franklin Sav. Ass'n*, 756 S.W.2d at 15–16.

The right to monetary damages in a lawsuit for wrongful foreclosure is not an adequate remedy because "every piece of real estate is unique, and if foreclosure were allowed before a full determination" of the underlying claim, the homeowner "would be irreparably harmed." *Perales v. Riviera*, No. 13-03-002-CV, 2003 WL 21705740, at *3 (Tex. App.—Corpus Christi July 24, 2003, no pet.) (mem. op.); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.—Corpus Christi 1987, no writ). Thus the availability of a remedy, like a claim for wrongful foreclosure, that provides monetary damages does not negate the element of "irreparable harm." *Guardian Sav. & Loan Ass'n v. Williams*, 731 S.W.2d 107, 108–09 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Perales*, 2003 WL 21705740, at *3.

The right of redemption is also not an adequate remedy for the homeowners. A foreclosure can, itself, be a substantial burden to the property owner—even if the property owner can recover the property. For example, a foreclosure can "ruin [the owner's] reputation, prevent him from borrowing money at any other financial institution in the United States." *Guardian Sav. & Loan Ass'n*, 731 S.W.2d at 108.

Neither a lawsuit for monetary damages for wrongful foreclosure nor the statutory right of redemption is an adequate remedy for the homeowners. The

homeowners established that they would suffer "irreparable harm" if Stewart Beach foreclosed on their properties.

Accordingly, we overrule Stewart Beach's second issue.

## Unclean Hands

Stewart Beach next argues that "[a]sking the trial court to enjoin [Stewart Beach's] statutory and contractual rights while [the homeowners] confess to material breach flies in the face of equitable principles. . . . [The homeowners] confess they owe the debt for delinquent assessments, the court found they owed the debt and included the findings in the injunction Orders."

The doctrine of "unclean hands" allows a court to "refuse to grant equitable relief, such as an injunction, sought by one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 597 (Tex. App.—Austin 2015, no pet.) (internal quotation marks and citations omitted). "A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine." *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.).

Admitted breach of a contract is not necessarily sufficient to invoke the doctrine of unclean hands.[13] *See David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1982, no writ) (refusing to apply unclean-hands doctrine to prevent party who admitted to breaching arbitration provision from seeking temporary injunction); *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04-05-00228-CV, 2005 WL 2012669, at *2 (Tex. App.—San Antonio Aug. 24, 2005, no pet.) (mem. op.) (affirming trial court's order granting temporary injunction and rejecting argument that moving party had unclean hands because of breach of contract). Thus, the homeowners' admission that they did not pay the assessments does not bar them from seeking a temporary injunction.

In addition, Stewart Beach does not show that it is "seriously harmed" or that any "wrong complained of cannot be corrected without applying the doctrine." *City of Fredericksburg*, 126 S.W.3d at 221. The trial court's requirement that the homeowners post a bond in the amount of the assessments and reasonable

---

[13] None of the cases cited by Stewart Beach held that an admission of a breach of contract automatically bars a party from seeking an injunction under the unclean-hands doctrine. In three of the cases cited by Stewart Beach, the courts upheld the temporary injunctions, holding that the moving party did not have unclean hands. *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 149–50 (Tex. App.—Waco 2010, no pet.); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Thomas v. McNair*, 882 S.W.2d 870, 881 (Tex. App.—Corpus Christi 1994, no pet). The fourth case, *City of Fredericksburg v. Bopp*, did find that the party seeking the injunction had unclean hands because the party's actions were "marked by a want of good faith." 126 S.W.3d at 222. That case is not analogous to this case, however, because Stewart Beach has not presented any allegation or proof of bad faith by the homeowners.

attorney's fees they admit are due protects Stewart Beach's interests, and, thus any "wrong complained of" has been "corrected" without applying the unclean-hands doctrine. *Id.* Accordingly, we overrule Stewart Beach's third and final issue.

## Conclusion

We affirm the order of the trial court.


Harvey Brown
Justice

Panel consists of Justices Jennings, Higley, and Brown.