In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-17-00481-CV
_____

### FELICIA SILLS, MICHAEL JAY WILLIAMS AND TAMARA CHE WILLIAMS, Appellants

### V.

### TIFFANY DAWN WEDGEWORTH, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-09-10877-CV**

### MEMORANDUM OPINION

This appeal arises from a dispute between Jessica James's heirs over a temporary injunction order restraining the appellants[1] from entering the home where

---

[1] The injunction order at issue enjoins Felicia Sills, Michael Jay Williams, and Tamara Che Williams, the appellants, from entering the property that Jessica James deeded to Tiffany Wedgeworth until the court can conduct a trial that will resolve the appellants' trespass to try title claims. The evidence in the hearing established that James's son, Jackson Williams, died in 2010. Michael and Tamara are his children. Felicia is James's daughter, and Tiffany's mother.

1

James was living when she died. A trial court's ruling on a temporary injunction is subject to an interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2017) (authorizing interlocutory appeals from rulings granting or refusing to grant temporary injunctions). For the reasons explained below, we conclude that the trial court did not abuse its discretion by granting the order that the appellants are challenging in this appeal.

## Background

In September 2017, Felicia Sills, Michael Jay Williams and Tamara Che Williams sued Tiffany Wedgeworth in a trespass to try title action claiming that they owned the property that is at issue in this dispute. They also alleged that James died intestate, and that James did not have sufficient mental capacity in January 2014 to execute a valid deed. When Tiffany appeared in response to the trespass to try title action, she filed a general denial and a counterclaim. In her counterclaim, filed in October 2017, Tiffany asserted that she owns the property at issue in the dispute, and she alleged that James executed a will in 2001 that James never revoked. Additionally, Tiffany's counterclaim requests that the trial court evict Felicia from James's residence, and alleges that Tiffany was entitled to damages that were caused by the appellants filing a false affidavit of heirship, destroying her property, and refusing her demand for rent.

2

In November 2017, Tiffany filed a motion seeking a temporary injunction to prevent Felicia, Michael, and Tamara from entering the property that Tiffany claims she acquired from her grandmother, Jessica James. The evidence in the hearing established that James deeded the property in dispute to Tiffany in January 2014, approximately six and one-half months before James died in August 2014. The deed to the property reflects that it was recorded in Montgomery County's real property records in April 2014, prior to James's death.

While Tiffany relied primarily on the deed that she has to the property in claiming that she was entitled to injunctive relief, Tiffany also disputed the appellants' allegations asserting that James had died without a will. The record before the trial court includes a copy of the will that James executed in 2001. Felicia, Michael and Tamara claim that James destroyed the original of her 2001 will, while Tiffany claims that the will mysteriously disappeared and that Felicia was responsible for destroying the original of James's 2001 will. During the hearing on Tiffany's request for injunctive relief, Tiffany established that she is James's granddaughter, and that James deeded her the property that is at issue in the dispute. A copy of James's 2001 will[2] was admitted during the hearing, and the will purports

---

[2] The parties have not argued, and we expressly do not decide, whether James's 2001 will was valid or whether it effectively created a life estate in Felicia's favor. Therefore, in the opinion, we characterize matters concerning the will in terms

3

to convey the house that is at issue in the dispute to Tiffany, subject to a life estate in Felicia's favor, which James made contingent on a requirement obligating Felicia to pay Tiffany $500 per month in rent.[3] Nevertheless, most of the evidence that the parties asked the trial court to consider in the hearing to decide whether to issue a temporary injunction addressed whether James had sufficient mental capacity in January 2014 to enable her to execute a valid deed. In the hearing, it was undisputed that when James died, she was ninety-five years old, and physically infirm.

Tiffany called three witnesses during the hearing conducted on Tiffany's request for injunctive relief. Tiffany indicated that her grandmother was perfectly fine, mentally, until the day she died; that Tiffany had lived on James's property with James and with her mother on and off throughout her life; that James deeded the property to her in January 2014; that Felicia has never paid rent while living at

---

designed to indicate that we are not deciding whether the will is a valid will or whether it created a life estate in Felicia's favor or merely an option to rent the home located on the property that is at issue in the dispute. The document in evidence in the hearing is a copy of the 2001 will, not the original, signed document. The will purports to convey the property at issue in the dispute to Tiffany, and gave Felicia the right to rent the home from Tiffany for $500 per month and the right to live in the home until she died. The will then indicates that Tiffany would get the property should Felicia live elsewhere.

[3] We note that the evidence in the hearing does not show whether James's 2001 will had either been admitted or been rejected by the probate court in connection with the proceedings required to probate James's estate.

4

the residence, even after James died; and that she had demanded that Felicia pay rent, but Felicia had refused to do so. Tiffany also testified that in October 2017, she had been unable to access James's house because the locks on the house had been changed. According to Tiffany, before she was locked out of the home, she was living there with her children and her mother, Felicia. Tiffany testified that it had been her practice to lock her room, her children's room, and the bathroom, which contained their property. According to Tiffany, when she first regained access to the house after she was locked out, she discovered that someone had forcibly entered the rooms she left locked. She also discovered that the front door lock had glue in it, which prevented a key from opening the door. According to Tiffany, the windows to the house had been screwed shut, and many of her clothes and other items of her personal property were missing or damaged. Tiffany asked the trial court to enter a temporary injunction to prevent Felicia from entering the house because she believed Felicia was responsible for damaging the house and the property she had in the rooms she used there. Tiffany also testified that she thought Felicia would continue to damage her property should Felicia be allowed to live in the home.

Tiffany's second witness, Caroline Jones, testified that she spoke with James in January 2014 on the occasion of James's 95th birthday. According to Jones, James did not exhibit any signs of dementia or Alzheimer's disease during her birthday

party. Tiffany's third witness, Alton Hughes, testified that James came to a party at his home in September 2013. According to Hughes, when he spoke with James in 2013, she did not exhibit any signs indicating to him that she was having any mental problems.

Felicia and her son Billy Sills were the only two witnesses who testified on the appellants behalf during the hearing the court conducted on Tiffany's request for injunctive relief. Felicia testified that she lived in James's house since June 1988. According to Felicia, Tiffany moved out of the house after being served with Felicia's lawsuit challenging the validity of Tiffany's deed. Felicia testified that in her opinion, James was incompetent in January 2014 to execute a valid deed. According to Felicia, James had been having difficulty for several years before January 2014 communicating with others, James did not seem to be aware of her surroundings, and James was having difficulty recognizing people that she should have known. Felicia recalled that she first noticed that James was having problems recognizing people in 2010, when James attended her son Jackson Williams's funeral. Felicia denied that she destroyed any of Tiffany's property, that she had put glue in the locks on James's home, or that she had thrown any of Tiffany's belongings away. According to Felicia, James's home has been modified to accommodate her wheelchair. Felicia also testified that she moved in with her son

after the trial court signed a temporary restraining order that required her to move out of James's home. According to Felicia, she cannot afford to rent an apartment. Felicia denied that she ever prevented Tiffany from entering James's home.

Billy's testimony is generally consistent with the testimony given by his mother. According to Billy, Felicia has lived in James's house since 1988. Billy agreed that he recently changed the locks on the home at Felicia's direction, but he denied causing any damages to anyone's property. According to Billy, he began living in James's home in 2012. Since the date he began living there, James was disabled and could not walk, requiring him to carry her from her bed to a couch. Billy indicated that James generally remained on the couch throughout the day. Billy also testified that he was responsible for bathing James after he moved into James's home.

At the conclusion of the hearing, the trial court granted Tiffany's request seeking a temporary injunction. The comments the trial court made at the conclusion of the hearing reflect the trial court's view that Tiffany's deed established that Tiffany was the putative owner of the property at issue in the dispute. As the putative owner of the property, the trial court indicated that Tiffany had the right to exclude all others from the property, pending any further proceedings that were required to finally resolve the appellants' claims that the 2014 deed to James's property was

invalid. The trial court also set the bond that is required for such orders to protect the appellants' rights at $500, which would remain in effect until the dispute was finally resolved.

## Analysis

A trial court's ruling granting a party's request for temporary injunctive relief is reviewed on appeal for abuse of discretion. *Davis v. Huey,* 571 S.W.2d 859, 861-62 (Tex. 1978). The appellants have challenged the trial court's ruling in five issues. In issue one, the appellants argue the trial court abused its discretion by granting temporary injunctive relief because the relief the trial court extended to Tiffany altered the existing status quo. In their second issue, the appellants argue the trial court abused its discretion by granting Tiffany's request "merely because [Tiffany] is the record title holder, contrary to Texas law." In issue three, the appellants argue that Tiffany failed to establish that she would likely succeed on the merits of her claim alleging that she owns the property in dispute. In issue four, the appellants contend that barring Michael and Tamara from entering the property prior to the trial on the merits was an abuse of discretion because there was no evidence that they had "done any act to justify an injunction[.]" In issue five, the appellants contend the amount of the bond the trial court required Tiffany to post pending a trial on the merits is inadequate.

For convenience, we address issues one through three together. Generally, to prevail on a claim seeking temporary injunctive relief, a plaintiff must plead and prove: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002). In this case, the temporary injunction concerns preserving real and personal property that Tiffany claims she owns. In cases involving real or personal property, a trial court may grant a temporary injunction if "irreparable injury to real or personal property is threatened, irrespective of any remedy at law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5) (West 2008).

In cases involving real or personal property, the party seeking temporary injunctive relief must demonstrate that they own the property, and that a threat of irreparable injury exists regarding the property. *Id.* During a hearing on a temporary injunction, the trial court acts as the finder of fact. *See Rocklon, LLC v. Paris*, No. 09-16-00070-CV, 2016 Tex. App. LEXIS 11393, at *28 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (not designated for publication) (holding that the evidence admitted during a temporary injunction hearing allowed the trial court to find that a document relevant to a parties' ownership rights was unreliable); *State Bd. of Ins. v. Prof'l & Bus. Men's Ins. Co.,* 359 S.W.2d 312, 321-22 (Tex. Civ. App.—Austin

9

1962, writ ref'd n.r.e.) (explaining that in a temporary injunction hearing, the trial court judges the credibility of witnesses and the weight that should be assigned to their testimony).

In this case, Tiffany's pleadings reflect that she was contesting the appellants' claim alleging that James had died without a will. Additionally, Tiffany filed an amended counterclaim, alleging that she owns the property that is at issue in the dispute and alleging that Felicia's status, when she was living in the house after James died, was merely that of a tenant. During the hearing on Tiffany's request for injunctive relief, Tiffany produced a facially valid deed to the property at issue in the dispute. While Felicia and her son Billy testified that James could no longer communicate, was not cognizant of her surroundings, and did not know who her family members were around the time that she executed the deed, Tiffany testified that James, although suffering from physical problems, was mentally fine until she died. Caroline Jones and Alton Hughes also testified in the hearing, and their testimony generally supports Tiffany's claim that James was not mentally impaired around the time she executed the January 2014 deed.

Based on the evidence available to it, the manner in which the trial court resolved the disputed fact issues was reasonable. *See Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Invs., LLC*, 481 S.W.3d 336, 343 (Tex.

App.—Houston [1st Dist.] 2015, no pet.). Given that the trial court's conclusion treating Tiffany as the putative owner of the property at issue was reasonable, we hold the trial court did not abuse its discretion by allowing Tiffany to have possession of the property until the dispute over the validity of the 2014 deed could be decided at trial. *See Butnaru*, 84 S.W.3d at 211. As a preliminary matter, and solely for the purpose of deciding whether to grant Tiffany's request for injunctive relief, the trial court was authorized to decide who should be in control of James's property until such time as the dispute over the 2014 deed can be finally resolved. *See Stewart Beach*, 481 S.W.3d at 343. Although the appellants argue that the trial court resolved the dispute concerning the validity of the deed prematurely, we disagree. The trial court has not decided the dispute on its merits; instead, it ruled as a preliminary matter based on the evidence that was before it in the temporary injunction hearing. Its ruling is temporary, and will end when the dispute is finally resolved in a trial. *Id.*

The appellants also dispute that Tiffany established that appellants damaged her property or presented a threat to it. A party seeking a temporary injunction must also prove in the hearing on her request for an injunction order that a threat of irreparable injury exists to their property. Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5). During the hearing in this case, the trial court could reasonably have

11

credited Tiffany's testimony that a threat of irreparable injury existed to her property given the damages to Tiffany's property that the court could have reasonably attributed to Felicia and her son. For instance, the court could have reasonably believed that Felicia and Billy were responsible for changing the locks on the property and damaging the locks on the bedrooms that Tiffany and her children were using. The circumstances also allowed the trial court to reasonably determine that Felicia and her son were responsible for the damages caused to Tiffany's personal property. We conclude the evidence admitted in the hearing allowed the trial court to reasonably conclude that a threat of irreparable injury existed to Tiffany's property. *See id.*

The appellants also argue that the trial court improperly altered the status quo by excluding them from the property. According to the appellants, Felicia had been living on the property for thirty years before the trial court granted an injunction, which required her to move out of James's home. However, because the trial court could reasonably view Tiffany as the home's putative owner, no abuse of discretion occurred when the trial court allowed Tiffany to exercise the rights that accompany the ownership of real property. Under Texas law, "an owner of realty has the right to exclude all others from use of the property, one of the 'most essential sticks in the bundle of rights that are commonly characterized as property.'" *Severance v.*

*Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). While the order required that Felicia move from James's home, the trial court could have reasonably determined from the evidence admitted in the hearing that the status quo was that Tiffany was the undisputed owner of the home prior to the date the appellants sued her claiming they owned James's home. As the putative owner of the home, the trial court could reasonably have found that Tiffany, for the purpose of its preliminary injunction ruling, had the right to exclude Felicia and any others from the property for which Tiffany has a facially valid deed. *Id*.

Under Texas law, for the purposes of injunctions, the status quo is defined as "the last, actual, peaceable, non-contested status that preceded the pending controversy." *State v. Sw. Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex. 1975). The term "peaceable possession" is defined by the Texas Civil Practice and Remedies Code as the "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." Tex. Civ. Prac. & Rem. Code Ann. § 16.021(3) (West 2002). In this case, the evidence admitted during the hearing on Tiffany's request for injunctive relief allowed the trial court to find that Tiffany's possession rights to the property were undisturbed until September 2017, when the appellants filed a suit alleging that they had inherited the property when James died. *See id*. We

13

conclude the trial court's order did not alter the status quo that existed immediately prior to the date the appellants filed the suit that is related to this appeal.

The appellants also argue that the trial court ruled in Tiffany's favor merely because Tiffany established that she was the putative owner of the property at issue in the dispute. According to the appellants, the ruling the trial court made granting Tiffany's request for injunctive relief prematurely adjudicated the validity of the deed. We disagree that the granting of an injunction results in a final resolution of a parties' claims. When seeking a temporary injunction, the applicant is merely required to plead a cause of action and present some evidence to sustain its request. *See Stewart Beach*, 481 S.W.3d at 346. The evidence required in the hearing to allow a trial court to issue a favorable ruling is merely evidence that is sufficient to raise a bona fide issue regarding the applicant's right to obtain a final judgment. *Id.* Therefore, preliminary injunction rulings are not final adjudications, but are instead interim measures designed to allow courts to preserve the status quo. *See State Bd. of Ins.,* 359 S.W.2d at 321 (noting that it was not within the province of the appeals court to determine whether the evidence from the temporary injunction hearing would support a judgment in either parties' favor). For the reasons discussed above, we overrule the appellants' first three issues.

In issue four, the appellants argue that the trial court abused its discretion by enjoining Michael and Tamara from James's home. According to the appellants, no evidence was introduced in the hearing that showed they had damaged or threatened to damage Tiffany's property. While we agree that there is no direct evidence that they were responsible for damaging Tiffany's property, we disagree that the evidence did not permit the trial court to determine that they represent a threat to it. The record shows that Felicia, Michael, and Tamara are all represented by the same attorney, and that they filed all of their pleadings jointly. Essentially, their interests in the lawsuit are aligned. For example, Felicia, Michael and Tamara have all claimed that they are the owners of the real property that is at issue in the dispute.

The Rules of Civil Procedure expressly permit the order granting an injunction to bind "the parties to the action." Tex. R. Civ. P. 683 (permitting an injunction to bind the parties to the action). For the limited purpose of the hearing on the injunction, the trial court could reasonably find that Tiffany is the putative owner of the property that is at issue in the dispute. In light of the trial court's determination that Tiffany is the putative owner of the real property at issue, and the fact that Michael and Tamara were disputing Tiffany's claim, the order at issue in this appeal simply prevents Michael and Tamara from entering the property until such time as they have established that they actually have ownership rights to the property. We

15

conclude that the order granting Tiffany's request for a temporary injunction is not overly broad merely because it excludes parties claiming an ownership interest in the property involved in the dispute until the competing claims can be resolved in a trial. *See Webb v. Glenbrook Owners Ass'n*, *Inc.*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.) ("An injunction should be broad enough to prevent a repetition of the evil sought to be corrected."). Under the circumstances, Michael and Tamara had threatened Tiffany's rights under the 2014 deed; consequently, we hold the trial court did not abuse its discretion by rendering an injunction order that excludes Michael and Tamara from the property until they have established they own the property. We overrule issue four.

In issue five, the appellants argue that the trial court abused its discretion by failing to set an adequate bond. According to the appellants, the bond is inadequate because Felicia established that she would have to pay rent of at least $900 per month to obtain suitable housing until her claims could be resolved in a trial. Based on Felicia's testimony, the appellants argue that the bond is inadequate and should be increased.

The purpose of a bond is to provide protection to the enjoined party for any possible damages occurring as a result of the injunction. *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 286 (Tex. App.—San Antonio 2003, no pet.).

Questions about the adequacy of a bond that accompanies a temporary injunction order are reviewed for abuse of discretion. *Id*. The Rules of Civil Procedure required the trial court to impose a bond on Tiffany, with the amount of that bond to be determined by the court. *See* Tex. R. Civ. P. 684.

As previously discussed, the evidence allowed the trial court to determine that Tiffany was the putative owner of the property pending the outcome of a trial to resolve the parties' claims. In setting the bond, the trial court could have considered that the appellants will be required to establish that the 2014 deed is invalid and that James died without a will. Even should the appellants prevail on both of those claims, Felicia would then merely be a co-owner of James's home with Michael and Tamara, the children of her deceased brother, who died in 2010. She would not be the sole owner of the home. Thus, absent an agreement between Felicia, Michael, and Tamara allowing Felicia to live in the house without paying rent, Felicia would not have the right to live in James's former home rent free.

However, no evidence was admitted during the hearing on the injunction that shows that Michael and Tamara have agreed to allow Felicia to live in James's former home without paying rent. Moreover, none of the testimony admitted during the hearing established what the fair monthly rental value of James's home was during the period that is relevant to the order that is challenged in the appeal. Finally,

17

the evidence in the hearing shows that Felicia, at the time the injunction hearing occurred, was living with Billy, and Felicia never indicated that Billy was charging her rent. Without testimony showing the reasonable monthly value of the rent for James's house in the time period covered by the order, and without evidence supporting a conclusion that Felicia had the right to live in James's home without paying rent, we cannot conclude that the trial court abused its discretion by requiring Tiffany to post a bond of $500. We overrule the appellants' fifth issue.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on February 26, 2018
Opinion Delivered July 12, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.