G. Raymond MILLER, Appellant,

v.

K AND M PARTNERSHIP and Clarence F. Kendall, II, Appellees.

No. 01–88–00974–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 27, 1989.

Ben L. Krage, Martin J. Sweeney, F. Glenn Smith, III, Kasmir & Krage, Dallas, for appellant.

Stanley B. Binion, J. Robin Lindley, Baker, Brown, Sharman & Parker, Houston, for appellees.

Before DUNN, HUGHES and WARREN, JJ.

## OPINION

WARREN, Judge.

This is an appeal from an order granting a temporary injunction enjoining appellant from transferring or encumbering 800,000 shares of disputed stock, and setting the temporary injunction bond at $50,000.

The order granting a temporary injunction is affirmed.

In 1983, G. Raymond Miller, appellant, and Clarence Kendall, appellee, started a security telephone business, where a computer operated telephone would provide security and other functions inside a residence. This start-up corporation was named Automatic Radius Management, Inc. ("ARM"). Appellant and appellee each owned 25% of the stock, while the development engineers, sales people, and others owned the remaining 50%.

ARM's business needed a computer to monitor telephone signals. In 1984, Kendall and Miller formed a partnership, K & M Partnership (K & M), to purchase the computer and lease it to ARM, so that they could take certain tax benefits and avoid additional capital contributions to ARM. However, ARM was unsuccessful and never made a payment to K & M on the computer lease. Both men lost millions of dollars on this venture. Miller left ARM to begin a new business venture in 1984. This new enterprise, United Payphones,

Inc. (UPI), was incorporated on March 18, 1985.

The ARM computer was moved to the UPI offices. It was decided that UPI would lease the computer and that common stock in UPI would be issued to Kendall and Miller as consideration for the lease. UPI corporate documents show that 74,375 shares of UPI common stock were issued to K & M, solely as consideration for the computer lease, with Miller receiving 62,-125 shares and Kendall receiving 12,250. UPI eventually merged with a publicly held corporation and changed its name to International Telecharge, Inc. (ITI). At the time of the merger, the UPI stock of Miller and Kendall was exchanged for stock of ITI on a 1 to 40 ratio; Kendall received 495,000 shares of ITI, and Miller received 2,465,556 shares.

Kendall filed this law suit to recover one-half the shares that Miller received in excess of those shares received by Kendall for the computer lease rights. Following the name change and 40 to 1 stock split, these disputed shares of UPI stock became 997,500 shares of ITI stock.

Both Kendall and Miller testified at the hearing on the application for temporary injunction, and each had a slightly varied version of the events leading to the issuance of stock made the subject of this lawsuit. Kendall testified that Miller consulted with him extensively about the concept of UPI, prior to its incorporation. Further, Kendall testified that it was Miller who determined that UPI needed a computer for its business, and suggested that the computer purchased by K & M be moved to the offices of UPI when ARM's creditors began foreclosing on ARM property. He believed that the stock was issued solely as consideration for the lease of the K & M computer, and he assumed the stock would be issued equally to the two partners, in conformity with the K & M partnership agreement. Further, he claims it was Miller who subsequently caused a disproportionate distribution of the UPI stock to be issued in consideration for the computer lease, and that Kendall first learned of the disproportionate distribution when he saw the June 1987 ITI prospectus. The ITI prospectus states that the stock was issued as consideration to K & M for the computer lease, and for no other reasons.

Miller testified that he issued the stock to Kendall because he felt bad about Kendall's losses after ARM's failure. He testified that Kendall had no capital to contribute to UPI and that the computer lease to UPI was only a legal device to show consideration for the issuance of stock to Kendall. He stated that UPI did not need the computer and did not use it the first few months it was at the UPI offices. He testified that, although Kendall was appointed a director of UPI, he had nothing whatsoever to do with UPI or its start-up. Although UPI made no payments to K & M on the lease agreement, it eventually bought the computer.

The UPI "Unanimous Consent of Directors in Lieu of Organizational Meeting" (unanimous consent) and subsequent June 1987 ITI prospectus, reflect that 74,375 shares of UPI common stock were issued to K & M solely as consideration for the computer lease and were disproportionately divided between the two men.

Miller's tax attorney testified that there was a mistake in the drafting of these documents and the unanimous consent did not accurately reflect the proper consideration for Miller's shares. According to the attorney, these extra shares were issued to Miller as consideration for his capital and effort contributions to the new business. He further testified that the computer lease was simply a method to legally justify on the books of UPI, the issuance of stock to Kendall.

ITI stock is currently traded on the American Stock Exchange. Each share was being bid at $9⅝ per share at the time of the temporary injunction hearing, while the price per share had ranged from $4⅛ to $14 over the previous year. Also at the time of the hearing, Miller was attempting to raise $150 million of additional financing for ITI. As presently planned, this capital acquisition would trigger a conversion of "sale" of Miller's ITI stock and would result in enormous tax consequences. To

avoid this problem, Miller planned to transfer two-thirds of his almost 2.5 million ITI shares, into a charitable remainder trust. This trust would pay Miller 10% of the fair market value of the trusts assets per year.

Appellant brings three point of error complaining that: (1) the trial court erred in granting a temporary injunction because the appellees failed to show lack of an adequate remedy at law; (2) the temporary injunction order is void because it fails to clearly set out the reasons for its issuance and does not properly set a date for a trial on the merits; and (3) the temporary injunction bond is insufficient and does not adequately protect appellant against a wrongfully issued temporary injunction.

■ In a hearing on an application for a temporary injunction, the applicant must plead a cause of action and show a probable right to the relief he seeks, and probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216 (Tex.1968); *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 756 (Tex.App.—Houston [1st Dist.] 1982, no writ). The applicant must further show that no adequate legal remedy exists. In order for a legal remedy to be adequate, it must give the applicant complete, final, and equal relief. *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d at 756.

■ A trial court has great discretion in granting or denying a temporary injunction, and its action will not be reversed unless the appellate courts are convinced that it represents a clear abuse of discretion. *Hartwell's Office World v. Systex Corp.*, 598 S.W.2d 636 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the movant's case are not presented for appellate review. Our review is strictly limited to whether there has been a clear abuse of discretion. *Philipp Bros. Inc. v. Oil Country Specialists, Ltd.*, 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd). An abuse of discretion occurs when the trial court misapplies the law to the established facts, or when the

evidence does not reasonably support the conclusion that the applicant has a probable right of recovery. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

In reviewing an order granting or denying a temporary injunction, the appellate court draws all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Valenzuela v. Aquino*, 763 S.W.2d 43, 44 (Tex.App.—Corpus Christi 1988, no writ).

■ In his first point of error, appellant contends that appellees failed to show that there was a lack of an adequate remedy at law. The crux of this argument is that under the evidence presented any injuries suffered by appellees were capable of exact calculation and, also that Miller was capable of adequately responding in damages. We overrule both contentions.

The testimony shows that Miller had plans to place two-thirds of his stock, valued between $20 and $25 million, into a charitable trust. Once the stock was in the trust, he would be unable to reclaim it. As the grantor, he would receive 10% of the market value of the stock in the trust each year until his death, at which time, the proceeds would be given to the charity designated. Under that plan, he would receive about $2.5 million annually from the trust. That leaves just over 800,000 shares of Miller's stock uncommitted to the trust. The trial court's order, enjoining Miller from transferring or encumbering 800,000 shares, does not hinder his plans to place two-thirds of his stock into a trust, and does not expose him to any extra tax liability should the $150 million capital contribution occur. In fact, Miller's tax attorney testified that prohibiting transfer of the 800,000 shares would not cause Miller to incur any tax liability.

In addition, the evidence established that the 997,500 shares at issue had a present value of about $10,000,000. The expected infusion of $150 million by investors, and the planned placement of the stock in a charitable trust, could significantly alter the value of the stock. The only evidence

of Miller's ability to respond to a $10,000,-000 judgment was his own testimony that his net worth was "several million dollars," and his testimony and that of his tax attorney that he would receive 10% of the trust's value annually, although each testified differently regarding the amount and method of this anticipated payment.

The evidence at the hearing did not conclusively establish that any injuries suffered by appellees were capable of accurate measurement, nor does it clearly demonstrate Miller's ability to respond in damages. We find that the trial court did not abuse its discretion in granting the temporary injunction.

Appellant's first point of error is overruled.

In his second point of error, appellant complains that the order does not set forth the reasons for its issuance and does not set out a date for trial, as required by Rule 683 of the Texas Rules of Civil Procedure. We do not agree.

The order provides in pertinent part:

It appearing from the Application, the evidence, and argument of counsel, after notice and hearing thereon, that K and M and Kendall are entitled to a temporary injunction to preserve the status quo pending trial on the merits, that unless G. Raymond Miller ("Miller") is immediately enjoined from selling, assigning, pledging, encumbering, or transferring 800,000 of the 997,500 shares of International Telecharge, Inc. ("ITI") stock claimed by Plaintiffs and held by Miller, *K and M and/or Kendall would suffer immediate and irreparable injury in that their rights [sic] in the ITI stock is subject to being extinguished and lost.* The Court further finds this Order is necessary to preserve the status quo. The court is therefore of the opinion the K and M and Kendall's Application should be granted. (Emphasis added.)

We find that the court has sufficiently set out its reasons for issuing the temporary injunction as required by the Texas Rule of Civil Procedure, 683.

■ Appellant also complains that the order is void on its face because it fails to set a date for trial on the merits as required by rule 683. The order did contain a trial date: February 6, 1988. The appellant complains that this is insufficient as the order was not signed until September 25, 1988, rendering the date, and the order, void.

The cases relied on by appellant, in which courts dissolved injunctions for lack of a trial date, concern orders where the trial court wholly failed to set a date for trial on the merits. This is not the case before us. The trial court included a date for trial as required by rule 683. We decline to find that a typographical error in the order is sufficient to render the order void, and find that the order meets the requirements of rule 683.

Appellant's second point of error is overruled.

In his third point of error, appellant contends that the trial court erred in fixing the amount of the bond at $50,000 because this does not adequately protect him against a wrongfully issued temporary injunction.

As a general rule, the amount of the bond required on the issuance of a temporary injunction rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *Currie v. International Telecharge, Inc.,* 722 S.W.2d 471 (Tex.App.—Dallas 1986, no writ). The failure to require a bond in a sufficient amount does not affect the validity of an injunction. *Speedman Oil Co. v. Duval County Ranch Co.,* 504 S.W.2d 923 (Tex. Civ.App.—San Antonio 1973, writ ref'd n.r.e.). Appellant contends that the trial court's order will cause him to incur in excess of $2 million in income tax liability and that $50,000 is insufficient to protect him from a wrongfully issued injunction. At the hearing, his tax attorney testified that appellant would put only two-thirds of his stock into the trust. Further, his tax attorney testified that an injunction, enjoining transfer of the 800,000 shares of stock not intended to be placed in the charitable trust, would not cause appellant to incur

any added tax liability. The trial court has carefully drafted its order so as not to enjoin appellant from transferring the two-thirds of his 2.4 million shares of stock into the charitable trust.

Based on the testimony of appellant and his tax attorney at the hearing, we find that the $50,000 bond adequately protects appellant.

■ Further, appellant did not contest the bond's sufficiency in the trial court; therefore, he has waived any complaint regarding its insufficiency. *Mansfield v. Ramsey*, 196 S.W. 330, 332 (Tex.Civ.App.—Beaumont 1917, no writ).

The temporary injunction is affirmed.