03-17-00863-CV

ACCEPTED
03-17-00749-CV
21539504
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/31/2017 6:53 PM
JEFFREY D. KYLE
CLERK

*In the*

## *Third Court of Appeals*

## *Austin, Texas*

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/2/2018 8:00:00 AM
JEFFREY D. KYLE
Clerk

FILED
*January 5, 2018*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

_____

**No.: 03-17-749-CV**
_____

**SBI Investments LLC, 2-14-1 and L2 Capital, LLC, Appellants,**

**v.**

**Quantum Materials Corp., Appellee.**

---------------------

**On Appeal from the 428th District Court**
**Hays County, Texas**
**Trial Court Cause No. 17-2033**
**The Hon. Gary Steel, Presiding**

---------------------

Michael Louis Minns
TBN: 14184300
Ashley Blair Arnett
TBN: 24064833
MINNS &ARNETT
9119 Gessner
Houston, Texas 77074
mike@minnslaw.com
ashley@minnslaw.com
(713) 777-0772 (direct)

Seth Kretzer
TBN: 24043764
KRETZER LAW FIRM
440 Louisiana Street, Suite 1440
Houston, Texas 77002
seth@kretzerfirm.com
(713) 775-3050 (direct)

*Attorneys for Appellee, Quantum
Materials Corp*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary. The district court did not abuse its discretion, but rather came to the only logical conclusion based on the extensive evidence. Appellants' primary issue, a procedural one, complaining of an alleged notice failure by a defaulting party, simply makes no sense in light of the record showing an exhaustive adversary proceeding at which the Appellants attended, presented witnesses, and vigorously cross-examined the Appellee's witnesses.

# TABLE OF  CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

INDEX OF AUTHORITIES .........................................................................iii

INTRODUCTION ....................................................................................1

    A.    Procedural Issue ................................................................1

    B.    Substantive Issues .............................................................1

I.    Empire Received Notice ...........................................................2

II.    Appellants Do Not Have Standing to Assert A Contention of  Defective Service on Empire ...................................................................7

    A.    The Appellants Do Not Meet Any Conception Of Third-Party Standing Relative to The Injunction Because That Injunction Does Not Affect Them With Any Injury .......................................7

    B.    There Are No Procedural Defects Vis-à-vis Empire, But Regardless, The Appellants Have No Standing to Litigate Any Procedural Defects in Service on Empire Because Appellants Fully Participated in the October 26 Hearing ...........................................................8

    C.    The Participation By Appellants' Counsel At The Injunction Hearing Waives The Instant Notice Argument ..................................10

III.    Quantum Has A Probable Right Of Prevailing ............................................10

IV.    Quantum Will Suffer A Definitively Irreparable Injury ............................11

CONCLUSION .....................................................................................14

CERTIFICATE OF SERVICE.................................................................15

CERTIFICATE OF COMPLIANCE..........................................................15

# INDEX OF AUTHORITIES

**Cases**

*Amalgamated Acme Affiliates v. Minton*, 33 S.W.3d 387 (Tex. App.—Austin 2000) ..................................................................................................................10

*Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 48 Tex. Sup. Ct. J. 624 (Tex. 2005) 9

*Bell v. Craig*, 555 S.W.2d 210 (Tex.App.—Dallas 1977, no writ) ..............................7

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) ...........................................12

*Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844 (Tex. App.-Fort Worth 2005, no pet.) ..9

*ForScan Corp. v. Dresser Indus.*, 789 S.W.2d 389 (Tex. App.--Houston [14th Dist.] 1990, writ denied) ....................................................................................13

*Great Lakes Eng'g, Inc. v. Andersen*, 627 S.W.2d 436 (Tex.App.-Houston [14th Dist.] 1981, no writ) ...........................................................................................9

*Guerrero v. Satterwhite*, No. 13-11-00181-CV, 2011 Tex. App. LEXIS 7191 (App.—Corpus Christi Aug. 31, 2011) .........................................................6

*Landry v. Burge*, No. 05–99–01217–CV, 2000 WL 1456471, at *4 (Tex.App.—Dallas 2000, no pet.) ...........................................................................7

*M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 44 Tex. Sup. Ct. J. 905 (Tex. 2001) ...............................................................................................9

*Miller v. K & M P'ship*, 770 S.W.2d 84 (Tex. App.—Houston [1st Dist.] 1989) .....13

*Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 39 Tex. Sup. Ct. J. 1049 (Tex. 1996) ....................................................................8-9

*Pilf Invs. v. Arlitt,* 940 S.W.2d 255 (Tex. App.—San Antonio 1997) ......................10

*Q'Max Am., Inc. v. Screen Logix, LLC*, No. 01-15-00319-CV, 2016 Tex. App. LEXIS 2136 (App.—Houston [1st Dist.] Mar. 1, 2016).............................8

*Shaw's D. B. & L., Inc. v. Fletcher*, 580 S.W.2d 91 (Tex.Civ.App. Houston (1st Dist.) 1979, no writ) ..................................................................................11

**Statutes and Rules**

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4)......................................................7

6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1559, 441 (2d ed.1990) ....9

## A.    Procedural Issue

Appellants' primary argument trains on a procedural issue theoretically germane to a different entity, Empire Stock Transfer, that (at most) has no impact whatsoever on the appellants. There is simply no mechanism for the appellants to act as proxies for alleged procedural improprieties they perceive to have been suffered by a non-complaining party. Even if some vaporous procedural defect were established, the very appearance of the Appellants at the injunction hearing vitiates any contention of harm.

## B.    Substantive Issues

Appellants' secondary arguments are quasi-substantive in nature; the core problem is that the injunction 1) does not name either appellant; 2) does not proscribe or prescribe any conduct by either appellant, and 3) does not affect either appellant in any way, shape, or form that was identified by them in their opening brief. Nor does the opening brief address how these intervenors have standing vis-à-vis an injunction under these conditions. As best as your Appellee can tell, the Appellants want this Court to manufacture a theory of standing that their brief omits.

Regardless, it cannot be said that there is no irreparable injury because the Appellee presented testimony from an expert witness/professional economist that the actions of Empire Stock Transfer would place Quantum into an economic situation known in academic literature as a "death spiral" and Quantum's CEO explained that

1

Empire's actions could cause his other debentures to reset at rates that would destroy his capital structure. And it cannot be said that there is no evidence that the notes were paid timely and that the collateral should have been released. Mr. Squires testified that the notes were paid and there were no defaults. Even the witness for L2, Mr. Adam Long, conceded that he had received a large amount of money when the money was due. No one argued that the collateral should be forfeited because of delinquency. L2's essential argument was that there were ill-defined defaults in their ambiguous note terms, and therefore an undetermined additional amount of money might be due them. Based on the testimony, it was not only likely that the ultimate fact finder would rule in favor of Quantum, but highly unlikely that there would not be a directed verdict in favor of Quantum. Far more than the required evidence to maintain the *status quo*.

## I. EMPIRE RECEIVED NOTICE

The Appellants' first point of error was stated as an abuse of discretion by the district judge "when the party enjoined, Empire Stock Transfer, was not provided notice of the temporary injunction hearing." (Appellant's Brief, at vi). This argument is based on a counter-factual premise that the Appellants know is counter-factual.

Empire received proper actual notice, as well as constructive notice. Specifically, on October 10, 2017, Empire was served as shown on the following page.

The district court also took judicial notice of effective service on Empire in the following ways: 1) Empire has been wholly compliant with the injunction (Transcript, p. 23); 2) an officer of the court made an unrefuted representation that after actual service of the October 10 hearing, corporate counsel, Mr. Steven Morse, served appropriate facsimile notice of the hearing; 3) Empire has not contested the injunction even though the Appellants have done so vigorously.

It is difficult to understand what the Appellants are complaining about. Are they contending that Empire did not have effective notice (which they have no standing to do) or that Empire has chosen not to contest the injunction, which is a litigation decision exclusively in the discretion of Empire?

# CAUSE NO. 17-2033

| QUANTUM MATERIALS CORP | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | 428TH JUDICIAL DISTRICT |
| | § | |
| EMPIRE STOCK TRANSFER, INC. | § | |
| Defendant. | § | HAYS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Corin Sparre** who, being by me duly sworn, deposed and said:

"The following came to hand on **Oct 10, 2017, 2:30 pm,**

> **CITATION; QUANTUM MATERIALS CORPORATION'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION; WRIT TO SERVE; TEMPORARY RESTRAINING ORDER ,**

and was executed at **1019 Brazos , Austin, TX 78701** within the county of Travis at **03:00 PM** on **Tue, Oct 10 2017,** by delivering a true copy to the within named

> **EMPIRE STOCK TRANSFER, INC. via the Texas Secretary of State and accepted by authorized person, Liz Cordell.**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

_____
Corin Sparre
SCH 5625 Exp:09/30/2018

**BEFORE ME**, a Notary Public, on this day personally appeared **Corin Sparre**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON ___10-11-17___

_____
Notary Public, State of Texas

AARON THOMAS JOHNSON
Notary Public, State of Texas
Comm. Expires 05-30-2021
Notary ID 131149194

4

In open court on October 12, 2017, the hearing was reset to October 26, 2017, giving actual knowledge to all who appeared and constructive notice to everyone previously noticed to be at the courthouse.  The Order itself was served on Empire and obeyed by Empire, as reflected in the record, to which the court also took judicial notice.  See Transcript, p. 23.

On October 16, Counsel for the Appellee sent to personnel at Empire a copy of this Order; their confirmation is reproduced below; please note the word ***<u>"Received"</u>*** from Mr. Patrick Mokros at the domain name empirestock.com:

**Subject:** RE: extension - TRO--L2Capital---SBI Investments
**Date:** Monday, October 16, 2017 at 2:01:10 PM Central Daylight Time
**From:** Patrick Mokros <patrick@empirestock.com>
**To:** morgold@aol.com <morgold@aol.com>, info@empirestock.com <info@empirestock.com>, Brian Barthlow <brian@empirestock.com>, Casey Weseloh <casey@empirestock.com>
**CC:** ssquires@qmcdots.com <ssquires@qmcdots.com>, ssquires4@aol.com <ssquires4@aol.com>, ejscpamba@aol.com <ejscpamba@aol.com>, Ashley Arnett <ashley@minnslaw.com>, Michael Minns <mike@minnslaw.com>

Received.

**From:** morgold@aol.com [mailto:morgold@aol.com]
**Sent:** Monday, October 16, 2017 11:58 AM
**To:** info@empirestock.com; Brian Barthlow <brian@empirestock.com>; Casey Weseloh <casey@empirestock.com>
**Cc:** ssquires@qmcdots.com; ssquires4@aol.com; ejscpamba@aol.com; ashley@minnslaw.com; mike@minnslaw.com
**Subject:** Fwd: extension - TRO--L2Capital---SBI Investments

see enclosed continuation of TRO for your files . Please acknowledge receipt--thanks

Steven Morse, Esq.
Morse & Morse, PLLC
1400 Old Country Road
Suite 302
Westbury, NY 11590
tel: 516-487-1446
cell 516-445-7635
fax: 516-487-1452
email: morgold@aol.com

-----Original Message-----
From: Ashley Arnett <ashley@minnslaw.com>
To: stephen squires <speedwell2727@yahoo.com>; Michael Minns <mike@minnslaw.com>; morgold <morgold@aol.com>
Sent: Mon, Oct 16, 2017 1:25 pm
Subject: FW: extension - TRO

At the minimum, Empire had proper notice. *See, e.g., Guerrero v. Satterwhite*, No. 13-11-00181-CV, 2011 Tex. App. LEXIS 7191 (App.—Corpus Christi Aug. 31, 2011), *12-13 ("The trial court, after confirming that Robert was present in the courtroom and that he had a copy of the amended writ of injunction, had Robert served. Service by the court was complete and proper. Therefore, because the injunction was then properly served, we conclude that the trial court did not

abuse its discretion when it enforced the injunction.").

With all due respect, the Appellants' notice argument is disingenuous because Appellee obviously did not serve the Intervenors (because they had not yet intervened) so the Appellants had to have received notice from Empire. In other words, Appellants raise as their first point of error the putatively defective service on Empire when service on Empire was how the Appellants know to attend the injunction hearing in the first place.

## II. APPELLANTS DO NOT HAVE STANDING TO ASSERT A CONTENTION OF DEFECTIVE SERVICE ON EMPIRE

### A. The Appellants Do Not Meet Any Conception Of Third-Party Standing Relative to The Injunction Because That Injunction Does Not Affect Them With Any Injury

It is a legal maxim that persons not named in an injunction may nevertheless take an appeal if they can establish a direct injury; in other words, an appellant need not be a party to a temporary injunction in order to have standing to appeal it, so long as the appellant is personally aggrieved by the entry of the temporary injunction and therefore, has a justiciable interest in the controversy. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (authorizing a "person" to appeal from the grant or denial of a temporary injunction); *Landry v. Burge*, No. 05–99–01217–CV, 2000 WL 1456471, at *4 (Tex.App.—Dallas 2000, no pet.) (not designated for publication) (non-parties that are personally aggrieved by temporary injunction have standing to appeal); *Bell v. Craig*, 555 S.W.2d 210, 211–12 (Tex.App.—Dallas 1977, no writ)

7

(party adversely affected by temporary injunction had standing to appeal despite fact that order did not expressly enjoin him from doing anything); *Q'Max Am., Inc. v. Screen Logix, LLC*, No. 01-15-00319-CV, 2016 Tex. App. LEXIS 2136 (App.—Houston [1st Dist.] Mar. 1, 2016) (same).

Query: what injury do the Appellants complain of? Their merits brief elides any mention of the fact that 1) the injunction does not name them and 2) has no derivative effect on them. The closest that the merits brief comes is this:

> In other words, what Quantum has complained about is not that they will be losing their shares, but that Appellants could purchase shares for a lower price- a monetary concern directed at Appellants, not Empire.

Brief, p. 15.

Perhaps, this might suggest a potential dispute between Appellants and Quantum, for the ultimate factfinder, but such a condition has nothing to do with the injunction entered against Empire.

**B.** **There Are No Procedural Defects Vis-à-vis Empire, But Regardless, The Appellants Have No Standing to Litigate Any Procedural Defects in Service on Empire Because Appellants Fully Participated in the October 26 Hearing**

The Appellants could not have been injured by any defective service on Empire. The most fundamental weakness in the Appellants' argument is that, in Texas, the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662, 39 Tex.

8

Sup. Ct. J. 1049 (Tex. 1996) (quoting *Tex. Air Control Bd.*, 852 S.W.2d at 446). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848, 48 Tex. Sup. Ct. J. 624 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1559, 441 (2d ed.1990)). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App.-Fort Worth 2005, no pet.). *See also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707-08, 44 Tex. Sup. Ct. J. 905 (Tex. 2001) (analyzing standing in the context of asserted claim).

To the contrary, Appellants participated in the October 26, 2017 injunction hearing, the transcript of which runs to 137 pages. Nowhere in the merits brief do the Appellants claim that their ability to present evidence, or to cross-examine, was impeded. Cf., *Great Lakes Eng'g, Inc. v. Andersen*, 627 S.W.2d 436, 436 (Tex.App.-Houston [14th Dist.] 1981, no writ) (order denying temporary injunction reversed because "trial court abused its discretion in not allowing the appellant to fully develop its evidence"). Nor could such an argument have been made with any seriousness, since the Appellants cross-examined both the CEO of Quantum, Mr. Steve Squires, and the expert witness, economist Dr. Kenneth Lehrer. Moreover, Appellants also presented their own witness, Adam Long of L2 Capital.

## C.	The Participation By Appellants' Counsel At The Injunction Hearing Waives The Instant Notice Argument

Appellants had the same able counsel at the Injunction hearing as they do in this appeal; the presence of such counsel at the hearing waives any notice argument:

> University Sports also asserts that it did not have counsel present at the temporary injunction hearing because Rash was only making a partial or special appearance on its behalf. Rash was authorized to adopt Amalgamated Acme's motion to dissolve the TRO, and to argue the motion to continue the temporary injunction hearing. University Sports did not authorize Rash to argue the merits of the injunction. University Sports does not offer any support for its argument that an attorney can make a partial or special appearance as to some matters but not others while still preserving the party's rights on appeal as to those matters it refused to permit the attorney to argue.

*Amalgamated Acme Affiliates v. Minton*, 33 S.W.3d 387, 396-97 (Tex. App.—Austin 2000).

Contrast the active advocacy of the Appellants at the Injunction hearing with the situation which compelled reversal in *Pilf Invs. v. Arlitt*:

> Although counsel for the unnamed defendants had actual notice of the motion and hearing, that does not put them on notice that they will be expected to also defend the unnamed parties at the injunction hearing.

940 S.W.2d 255, 260 (Tex. App.—San Antonio 1997).

Appellants stand at the completely opposite point; they intervened precisely so that they could oppose the injunction at the hearing, and their counsels did so throughout the hearing which spanned several hours.

## III.	QUANTUM HAS A PROBABLE RIGHT OF PREVAILING

This is an injunctive proceeding because Empire (on the instruction of the Appellants) converted treasury stock on its ledgers to collateral. The purpose was to

then convert it again to an asset trading on the open market. The district court had three options: 1) it could deny any relief at which point the collateral would have been forfeited and Quantum would have entered into the "death spiral"; 2) release the collateral back to Quantum; or 3) maintain the *status quo* of the stock as collateral for the final fact-finder to make a decision. In other words, the district court restrained a second unalterable conversion.

The Appellants' miscomprehension of the legal theory undergirding Quantum's lawsuit shows their miscomprehension of the role of a transfer agent; their confusion is seen in the following sentence: "Even in the lawsuit, Quantum does not seek to have empire return the stock to Quantum." Agreed. The problem is not that Empire has taken stock from Quantum that Quantum wants sent back. See *Shaw's D. B. & L., Inc. v. Fletcher*, 580 S.W.2d 91 (Tex.Civ.App. Houston (1st Dist.) 1979, no writ) (Once a presentment of the stock and request for change of ownership has been made, coupled with some proof of ownership, then the unreasonable refusal to transfer is a conversion of the stock.). To the contrary, the problem with Empire is that it would have wrongfully re-characterized shares of Quantum as collateral for the loans to the Appellants notwithstanding that the loans had been paid off.

## IV.   QUANTUM WILL SUFFER A DEFINITIVELY IRREPARABLE INJURY

The Appellants' argument in their opening brief that any damages to Quantum would be strictly monetary is tantamount to that which was extensively litigated at

the hearing. The Texas Supreme Court has made clear that a district court errs in issuing an injunction only when the evidence supports a single and decidedly opposite conclusion:

> [T]he trial court's conclusion that the Butnarus do not have an adequate legal remedy ***was not arbitrary and unreasonable*** and was not made without reference to guiding rules and principles. And, because the trial court's determination was not an abuse of discretion, the court of appeals should not have substituted its judgment for that of the trial court.

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (emphasis added).

For the reasons explicated below, it cannot be said that the district court abused its discretion in reaching a decision unsupported by the substantial evidence adduced.

Dr. Lehrer explained that a transfer of stock by Empire would likely force Quantum into a "death spiral" which could cause Quantum's intellectual property to be sold at vulture prices:

> [T]he generally accepted literature has come to be known as a
> death spiral. The more shares you get, the more you can sell; the more you can control at a lower price; create more defaults; get more shares. And eventually shares have been known to trade at one thousandths of a cent in other cases -- not this one. And the literature has nicknamed that the death spiral.
>
> And if all these shares are issued and the price falls and the death spiral comes into being, then Quantum will suffer irreparable damages for something that might not be.

Transcript, p. 28.

In other words, unlike quantifiable damages, Empire's conduct jeopardized the

12

going-concern value of Quantum's entire business. *See ForScan Corp. v. Dresser Indus.*, 789 S.W.2d 389, 395 (Tex. App.--Houston [14th Dist.] 1990, writ denied) (holding injunctive relief supported by defendant's testimony that he was in process of testing and attempting to market product).

Mr. Squires explained how Empire's transfer would force a dilution of existing shareholders by operation of a nesting reset pricing effect on Quantum's other debentures:

> SQUIRES:  The other debentures that he referred to do have the -- they have the option to ratchet it down. So, if we raise funds at a lower price, then their conversion rate lowers as well.
>
> Q. And does that mean you're not going to be able to sustain any lending at all and no one would lend you money?
>
> SQUIRES:  It would probably be a massive dilution, yes.

Transcript, p. 54.

Affirming an injunction in a similar context, the First Court of Appeals explained:

> [T]he evidence established that the 997,500 shares at issue had a present value of about $ 10,000,000. The expected infusion of $150 million by investors, and the planned placement of the stock in a charitable trust, could significantly alter the value of the stock.
>
> The evidence at the hearing did not conclusively establish that any injuries suffered by appellees were capable of accurate measurement, nor does it clearly demonstrate Miller's ability to respond in damages. We find that the trial court did not abuse its discretion in granting the temporary injunction.

*Miller v. K & M P'ship*, 770 S.W.2d 84, 88 (Tex. App.—Houston [1st Dist.] 1989).

To be sure, the Appellants offered a countervailing theory at the injunction hearing through the testimony of Mr. Adam Long of L2 Capital. (See Transcript, p. 93). The district court simply exercised its discretion in crediting a set of facts contrary to Mr. Long's testimony, and the Appellants have not shown this to constitute an abuse of discretion.

## CONCLUSION

The trial court's injunction should be affirmed. The Appellants' primary argument reduces to the contention that they can hide behind some vaporous procedural defect in the service on a different party even though they 1) appeared at the injunction hearing with numerous attorneys; 2) announced "ready"; 3) spent hours cross-examining witnesses; and 4) presented their own witness.

On the issue of irreparable harm, all the testimony favored the Appellee's position and the injunction order issued. By contrast, all the Appellants have brought forth in their brief are their own polemical arguments rather than an attack trained on the evidence on which the district court's injunction is based.

Dated: December 31, 2017                    Respectfully submitted,

_____
Michael Louis Minns
TBN: 14184300
Ashley Blair Arnett
TBN: 24064833
MINNS &ARNETT

14

9119 Gessner
Houston, Texas 77074
mike@minnslaw.com
ashley@minnslaw.com
(713) 777-0772 (direct)

Seth Kretzer
TBN: 24043764
KRETZER LAW FIRM
440 Louisiana Street, Suite 1440
Houston, Texas 77002
seth@kretzerfirm.com
(713) 775-3050 (direct)

*Attorneys for Appellee, Quantum Materials Corp.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this brief were served on all parties by electronic filing as indicated below on the 31st day of December 2017.

*Seth Kretzer*

_____

Seth Kretzer

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 2,791 words.

*Seth Kretzer*

_____

Seth Kretzer