# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00863-CV

### SBI Investments, LLC, 2014-1; and L2 Capital LLC, Appellants

### v.

### Quantum Materials Corp., Appellee

#### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
#### NO. 17-2033, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This accelerated, interlocutory appeal is from the trial court's order granting temporary injunction that enjoins Empire Stock Transfer, Inc., from conveying any shares that it holds on behalf of appellee Quantum Materials Corporation to appellants SBI Investments, LLC, 2014-1, and/or L2 Capital LLC. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (authorizing "person" to appeal from interlocutory order that grants temporary injunction). Because we cannot conclude that the trial court abused its discretion, we affirm the trial court's order granting temporary injunction.

## Background

Quantum is a publicly traded company located in San Marcos, Texas. In March 2017, Quantum borrowed money from and issued promissory notes to appellants and agreed that appellants could convert this debt into equity in the event that Quantum defaulted under the terms

of the notes. At the same time, Quantum delivered "irrevocable transfer agent instructions" to Empire, the holder/transfer agent for the parties' agreements, authorizing and instructing Empire to "reserve a sufficient number of shares of common stock ("Common Stock") of the Company [Quantum] (initially [a set amount of] shares of Common Stock which should be held in reserve for the Investor[s] [appellants] pursuant to the Note[s] and Warrant[s]) for issuance upon conversion of the Note[s] and/or exercise of the Warrant[s], in accordance with the terms thereof."

After disputes arose between Quantum and appellants over payments on the notes and other obligations of Quantum under the terms of the parties' agreements, Quantum filed the underlying suit against Empire at the end of September 2017 asserting the cause of action of conversion. Quantum alleged that: (i) the notes were "not convertible unless there [was] an event of default as defined in the notes"; (ii) in the event of a default, appellants "[could] convert their debt into equity at a disproportionately favorable exchange rate in favor of the appellants"; and (iii) appellants "[were] threatening to hold Quantum in default so that they [could] take these disproportionately more valuable equity stakes." Based on these factual assertions, Quantum sought to temporarily enjoin Empire from transferring shares to appellants "to prevent conversion of Quantum's stock in this way."

The trial court entered a temporary restraining order on October 2, 2017, restraining Empire from conveying any shares that it held on behalf of Quantum to appellants. In the order, the trial court found that, "without the temporary restraining order, Plaintiff's equity will be arrogated by two of its lenders under a unilaterally declared default with no mechanism to return the equity to Plaintiff and/or to instantiate the debt obligation that the lenders are trying to convert into equity."

2

The trial court also set bond and October 12, 2017, as the date for the temporary injunction hearing. Empire was served a few days later with a copy of the original petition and application for temporary restraining order and temporary injunction and the trial court's temporary restraining order, but it did not answer or otherwise make an appearance in the underlying proceeding.

On October 16, 2017, the trial court entered a subsequent order extending the temporary restraining order and resetting the hearing for October 26, 2017. By the time of the reset hearing, appellants had intervened in the proceeding, asserted affirmative claims for monetary damages against Quantum, and opposed Quantum's request for temporary injunctive relief. Shortly after the beginning of the reset hearing, the trial court took judicial notice that Empire was in compliance with the temporary restraining order. Quantum's witnesses at the hearing were an expert who was a forensic economist and the founder and CEO of Quantum. Appellants' witness was a principal of L2 Capital.

The parties provided contrary evidence about whether Quantum was in default under the parties' agreements, including the notes, and the effect on Quantum in the event that the trial court denied its request for a temporary injunction against Empire. The principal of L2 Capital testified about Quantum's alleged defaults, including making untimely and incorrect payments on the notes, failing to file a registration statement as contractually required, and replacing its auditor without seeking or obtaining appellants' consent. It was his position that the notes had been accelerated and were due in full because of Quantum's defaults, explaining, "When a default occurs in the agreement, the whole note is accelerated. So it's due and payable at the time of the default, which was ultimately in June." The founder and CEO of Quantum, however, testified that Quantum

3

had made the required payments under the terms of the notes and that it was his understanding that there were no other defaults under the parties' agreements. Quantum's expert testified that without the temporary injunction to enjoin Empire from conveying the shares at issue to appellants, Quantum's damages would be irreparable. He explained about the economic situation of a "death spiral" in these types of financial arrangements when the lender converts debt for stock.[1]

The exhibits at the hearing included copies of the notes; the irrevocable transfer agent instructions to Empire; a registration rights agreement and an equity purchase agreement between

---

[1] When asked about his conclusions about this case, the expert testified:

> This case is like the grandson of many other cases that have come into being since the advent of mortgage-backed securities and other specialized security instruments in the late 1980s.
> If you sign the note where the lender has the rights to convert, under certain circumstances, the stock and they can obtain large amounts of stock instead of cash, they can sell that stock and depress the price thereby getting more shares; creating more defaults; and getting more shares; creating more defaults and so on.
> And the nickname of that type of arrangement in the generally accepted literature has come to be known as a death spiral. The more shares you get, the more you can sell; the more you can control at a lower price; create more defaults; get more shares. And eventually shares have been known to trade at one thousandths of a cent in other cases—not this one. And the literature has nicknamed that the death spiral.
> In this case based upon the notes of what is being asked of Quantum to issue additional shares—Quantum or Empire—for some party to issue large amounts of shares instead of cash or to issue shares because they didn't get the cash on time or there's some sort of default which might not be a real default—since I'm not a judge or an attorney, I don't know if it's a real default or if it's an alleged default.
> And if all these shares are issued and the price falls and the death spiral comes into being, then Quantum will suffer irreparable damages for something that might not be. Since I'm not a judge, an attorney or a jury, I don't know what it would be.
> But I do know that if what is being asked of Empire comes into being and it turns out that it's wrong, there will be damages that you cannot reconstruct or overlook or turn the clock back on. The nickname for that is irreparable damages.

the parties; correspondence between Quantum, appellants, and Empire; and proof of payments by Quantum on the notes by check and wire transfer. The correspondence included a request by SBI Investments to Empire to convert Quantum's note into common shares and Quantum's response to Empire, providing notice of its payments on the notes and its dispute over certain pre-payment penalty charges and requesting that Empire remove "60% of [appellants'] request for reservation of shares" from Empire's system. In a letter dated October 2, 2017, the Chief Financial Officer of Quantum also advised appellants that two of the promissory notes had been "paid in full" and requested that appellants "unreserve" any Quantum common shares related to the notes.

Following the hearing, the trial court entered its order temporarily enjoining Empire from conveying any shares that it held on behalf of Quantum to appellants. In its order, the trial court's findings included the following:

1. Upon finding that Quantum Materials has carried its burden of showing (1) a cause of action against the defendant; (2) a probable right to relief sought; and (3) a probable, imminent, and irreparable injury in the interim, this Temporary Injunction is granted in accordance [with] Texas Rule of Civil Procedure 683, and the inherent equitable powers of the Court.

2. Without a temporary injunction Quantum Materials Corporation's stock will be converted with no mechanism for return of the stock to Quantum Materials Corporation.

*See* Tex. R. Civ. P. 683 (addressing form and scope of injunctions and restraining orders). The trial court also set the case for trial on the merits on April 16, 2018.[2] Appellants thereafter non-suited their claims seeking affirmative relief without prejudice and filed this interlocutory appeal.[3]

**Analysis**

Appellants raise three issues on appeal. They contend that the trial court erred in entering the temporary injunction because: (i) Empire was not provided notice of the temporary injunction hearing; (ii) "Quantum gave Empire the stock at issue in accordance with the contract such that there was no probable right to relief for conversion," and (iii) there was no showing of imminent or irreparable harm because "the damages here are monetary."

**Standard of Review and Applicable Law**

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The question before the trial court is whether the applicant is entitled to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id.*; *see State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) (defining status quo as "last, actual, peaceable, non-contested status that preceded the pending controversy"); *Tom James of Dall., Inc. v. Cobb*, 109 S.W.3d 877, 882 (Tex. App.—Dallas 2003, no pet.) (noting that

---

[2] The trial court's original order granting temporary injunction set trial for April 16, 2017, but the trial court entered a corrected order granting temporary injunction that sets the trial for April 16, 2018.

[3] Appellants' petition in intervention was not included in the appellate record.

6

underlying merits of controversy are not legal issues before trial court during temporary injunction hearing). "To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.) (citing *Butnaru*, 84 S.W.3d at 204); *see Southwestern Bell Tel. Co.*, 526 S.W.2d at 528 (explaining that applicant seeking temporary injunction is not required to establish that it will ultimately prevail in litigation).

We review a trial court's order granting temporary injunctive relief under an abuse of discretion standard. *See Butnaru*, 84 S.W.3d at 204 (citing *Walling*, 863 S.W.2d at 57; *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984)). A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principals. *See id.* at 211. We will not disturb the trial court's decision to grant injunctive relief absent a clear abuse of discretion. *Reagan Nat'l Advert. v. Vanderhoof Family Tr.*, 82 S.W.3d 366, 370 (Tex. App.—Austin 2002, no pet.). The scope of review is limited to the validity of the order granting or denying temporary injunctive relief. *See id.* (citing *Walling*, 863 S.W.2d at 58; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.)). When reviewing such an order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *Fox*, 121 S.W.3d at 857; *see Thompson*, 24 S.W.3d at 576. "A trial court does not abuse its discretion if it bases its decision on conflicting evidence and

7

evidence in the record reasonably supports the trial court's decision." *Fox*, 121 S.W.3d at 857. With these standards in mind, we turn to appellants' issues.

**Notice to Empire**

In their first issue, appellants contend that the trial court erred in entering the temporary injunction because Empire was never given notice of the hearing. *See* Tex. R. Civ. P. 681 ("No temporary injunction shall be issued without notice to the adverse party.").

As an initial matter, we address Quantum's jurisdictional arguments challenging appellants' standing to challenge the temporary injunction entered against the third party Empire. *See, e.g.*, *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) ("Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). Quantum argues that appellants do not have standing relative to the temporary injunction because it does not affect them with any injury and that they have no standing to litigate any procedural defects in service on Empire because they fully participated in the temporary injunction hearing.

A litigant, however, need not be a party to a temporary injunction in order to have standing to appeal it. *See Q'Max Am., Inc. v. Screen Logix, LLC*, No. 01-15-00319-CV, 2016 Tex. App. LEXIS 2136, at * 10–11 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (authorizing "person" to appeal grant or denial of temporary injunction)). A litigant has standing to appeal a temporary injunction if it is "personally aggrieved by the entry of a temporary injunction" so as to have a "justiciable interest in the controversy." *Id.* Here appellants are personally aggrieved by the temporary injunction because it

enjoins Empire from conveying shares of stock to them. *See id.* (concluding that contractual counterparty to enjoined party was personally aggrieved by entry of temporary injunction and holding that contractual counterparty had standing to appeal temporary injunction). Thus, we conclude that appellants generally have standing to appeal the temporary injunction.

We, however, cannot conclude that appellants have standing to complain about defective service on Empire. Appellants have failed to show how they were "personally aggrieved" by the alleged lack of notice to Empire—a third party—of the temporary injunction hearing.[4] *See, e.g.*, *Heckman*, 369 S.W.3d at 154–55 (explaining that plaintiff's alleged injury is starting point for standing inquiry and that "plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury"); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App.—Fort Worth 2005, no pet.) ("The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted."). As the trial court recognized during the temporary injunction hearing, Empire as the transfer agent in reality "doesn't have a big dog in this fight," and

---

[4] Appellants recognize in their reply brief that "[a]t no point has Appellants ever represented Empire or served as its proxy."

appellants were present and participated in the temporary injunction hearing.[5]  On these bases, we overrule appellants' first issue.

**Probable Right to Relief**

In their second issue, appellants argue that the trial court's finding that Quantum demonstrated a probable right to relief on its claim of conversion against Empire was not reasonably supported by the evidence.  Appellants argue that "it was not possible for Empire to have converted the stock at issue" because "Quantum had already given that stock to Empire for safekeeping in the event of a default"; "a contract specifically required that Empire acquire and later transfer the shares at issue"; and Quantum had not asked Empire to return the shares to Quantum.

---

[5]  Further, even if we were to conclude that appellants have standing to raise this complaint, we cannot agree with appellants' contention that notice to Empire was defective.  The record reflects that Empire was served with copies of Quantum's original petition and application for temporary restraining order and temporary injunction and the temporary restraining order; the temporary restraining order noticed the original hearing date for the temporary injunction hearing; Empire did not answer or appear at the original setting for the hearing; and, at the original setting, the trial court announced in open court that the hearing was reset to October 26, 2017, the date that the temporary injunction hearing ultimately occurred.

The record also reflects that Quantum's attorney arranged to serve the order that extended the temporary restraining order and noticed October 26, 2017, as the reset date for the temporary injunction hearing and, at the reset hearing, Quantum's attorney, as an officer of the court, represented that Empire had been properly served with the order by e-file and facsimile.  The attorney explained to the trial court that, if Empire had not been served with the notice, the case "wouldn't be going on right now" and that there would have to be a "new case" because Empire already would have conveyed the stock to appellants and "this company would be gone."  He further represented to the trial court that "the [c]ourt announced [the reset date] in open court and corporate counsel faxed [Empire] a copy of the order," explaining that they "wanted to get it to [Empire] as fast as [they] possibl[y] could because [they] did not want [Empire] destroying the company."  The trial court accepted Quantum's attorney's unrefuted representation as an officer of the court about service on Empire and took judicial notice that Empire had abided by the temporary restraining order.

"A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it." *Fox*, 121 S.W.3d at 857. "To establish a probable right to recover, a party 'is not required to prove that [it] will prevail on final trial in order to invoke the trial court's discretion to grant a temporary injunction.'" *University Interscholastic League v. Hatten*, No. 03-03-00691-CV, 2004 Tex. App. LEXIS 3372, at *6 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.) (quoting *Oil Field Haulers Ass'n v. Railroad Comm'n*, 381 S.W.2d 183, 196 (Tex. 1964)). "We will affirm the trial court's decision as long as there are grounds to believe that the claim has merit." *Id.* (citing *183/620 Grp. Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (noting that "appellee . . . required only to adduce evidence that tends to support his right to recover on the merits")); *see Stewart Beach Condo. Homeowners Ass'n v. Gili N Prop. Invs., LLC*, 481 S.W.3d 336, 346 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (explaining that temporary injunction hearing is not "*mini* trial" and that, to show probable right of recovery, applicant "'must plead a cause of action and present some evidence that tends to sustain it'" and that applicant's "'evidence must be sufficient to raise a bona fide issue as to the applicant's right to ultimate relief'" (quoting *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.))).

Quantum's asserted claim against Empire was conversion. To prevail on a claim for conversion of personal property, "a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property;

11

and (4) the defendant refused to return the property." *Apple Imps., Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied). The issue then is whether Quantum presented some evidence that tended to support its right to recover under this claim. *See Gili N Prop. Invs., LLC*, 481 S.W.3d at 346; *SPF Joint Venture*, 765 S.W.2d at 904.

Quantum presented testimony and documentary evidence that it had paid two of the notes in full and requested appellants to "unreserve any [Quantum] shares related to these two notes" and "return the original notes with a notation of Paid in Full"; that it had made payments when due in accordance with the terms of the notes; that it was not in default under the terms of the parties' agreements, including the pre-payment penalty provisions; that appellants had notified Empire that Quantum was in default and instructed Empire to convert Quantum's debt to appellants into common shares of Quantum; that Quantum had notified Empire of payments on the notes and the inapplicability of the pre-payment penalty because it had made the payments on the note on the maturity date; and that Quantum had instructed Empire that "60% of [appellants'] request for reservation of shares should be removed from [Empire's] system."

The documentary evidence also included the notes and transfer agent instructions. The conversion rights in the notes expressly were contingent on an event of default: "The Holder shall have the right at any time on or after an Event of Default (as defined herein) occurs under the Note, to convert all or any part of the outstanding and unpaid principal and amount and accrued and unpaid interest of this Note into fully paid and non-assessable shares of Common Stock . . . ." And the transfer agent instructions to Empire included the following:

The shares shall be issued within two (2) business day[s] of receipt of a notice of conversion with respect to the Note . . . . A copy of the Conversion Notice shall be provided by [appellants] to both Empire, [Quantum] and its counsel. . . . Upon your firm's receipt of the Conversion Notice . . . , your firm is hereby irrevocably authorized and instructed to issue shares of Common Stock of [Quantum] . . . to [appellants] at the request of [appellants] . . . without any further action or confirmation by [Quantum].

. . .

[Appellants] and [Quantum] understand[] that Empire Stock Transfer, Inc. (the "Transfer Agent") shall be required to perform any issuances or transfers of shares pursuant to this letter unless the respective issuance or transfer of shares is prohibited by a valid court order.

Although appellants presented contrary evidence, the trial court could have reasonably found that Quantum had presented evidence tending to support its claim that it was not in default under the terms of the notes and the parties' agreements. And, based on that finding, the trial court could have reasonably found that Quantum had presented some evidence that: (i) Empire had assumed control over shares that it was holding on Quantum's behalf inconsistent with Quantum's rights as the shares' owner; (ii) Quantum had demanded that Empire unreserve certain shares and refrain from conveying shares to appellants; (iii) Empire would refuse to comply with Quantum's demands without a court order prohibiting it from doing so; and, therefore, (iv) Quantum had presented some evidence that tended to support its right to recover under its claim of conversion against Empire. *See Gili N Prop. Invs., LLC*, 481 S.W.3d at 346; *SPF Joint Venture*, 765 S.W.2d at 904.

Viewing the evidence in the light most favorable to the trial court's order, we conclude that the trial court did not abuse its discretion by finding that Quantum had carried its

13

burden of showing that it had a probable right of recovery on its claim of conversion against Empire. *See Fox*, 121 S.W.3d at 857; *see also Q'Max Am., Inc.*, 2016 Tex. App. LEXIS 2136, at \*17–18 (observing that trial court does not abuse discretion "in entering an injunction based on its resolution of a conflict in the evidence"). We overrule appellants' second issue.

**Imminent and Irreparable Harm**

In their third issue, appellants argue that the trial court abused its discretion in granting the temporary injunction because "there was not a showing of imminent and irreparable harm—the only damages to Quantum is the loss of value of the shares transferred." An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Fox*, 121 S.W.3d at 857. The claimed injury must not be "merely speculative; fear and apprehension of injury are not sufficient to support a temporary injunction." *Fox*, 121 S.W.3d at 861.

Although appellants presented a countervailing theory at the injunction hearing through the testimony of L2 Capital's principal, Quantum presented evidence that supported a reasonable inference that, if the trial court did not enjoin Empire from conveying shares of stock to appellants, Quantum's business would be disrupted during the interim before the trial on the merits. *See Occidental Chem. Corp. v. ETC NGL Transp.*, LLC, 425 S.W.3d 354, 364 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) ("Texas courts have recognized that 'business disruptions' may result in irreparable harm for which a temporary injunction is appropriate."); *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ) (stating that disruption of business can be irreparable harm and type of harm for which

temporary injunction can issue); *Miller v. K & M P'ship*, 770 S.W.2d 84, 85, 87–88 (Tex. App.—Houston [1st Dist.] 1989, no writ) (affirming temporary injunction to prevent transfer of disputed stock shares and rejecting argument that appellees failed to show lack of adequate remedy at law); *see also Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 Tex. App. LEXIS 2280, *24 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.) ("Disruption to a business can constitute irreparable harm."). Evidence showed that the notes authorize appellants in the event of a default by Quantum to convert debt to equity at a significantly discounted rate, and Quantum's expert testified about the economic situation of a "death spiral" and the dilution and devaluation of Quantum's shares in that case. Viewing the evidence in the light most favorable to the trial court's order, we conclude that the trial court did not abuse its discretion by finding that Quantum carried its burden of showing imminent and irreparable harm in the interim before the trial on the merits. *See Fox,* 121 S.W.3d at 857; *Q'Max Am., Inc.*, 2016 Tex. App. LEXIS 2136, at *17–18.

In the last sentence of their briefing on the third issue, appellants also argue that the order granting temporary injunction does not comply with the specificity required under Texas Rule of Civil Procedure 683. Rule 683 requires an order granting temporary injunction to "set forth the reasons for its issuance." Tex. R. Civ. P. 683; *see Qwest Commc'rs. v. AT&T, Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (explaining that requirements of Rule 683 are mandatory and must be followed); *Vopak N. Am., Inc.*, 354 S.W.3d at 899 (observing Texas Supreme Court's holding that "Rule 683 mandates that a trial court granting a temporary injunction must explain in the order its reasons for believing that the applicant has shown that it will suffer injury if interlocutory relief is not granted").

Appellants argue that the order is noncompliant with Rule 683 because it states only that, "[w]ithout a temporary injunction Quantum Materials Corporation's stock will be converted with no mechanism for return of the stock to Quantum Materials Corporation" and that "there is no imminent and irreparable harm in stock being traded from one entity to another." The trial court's stated reason for granting the temporary injunction to preserve the status quo, however, goes to the crux of the parties' dispute about the necessity of temporary injunctive relief and is supported by Quantum's evidence about its "imminent" and "irreparable" harm in the event that the trial court did not enjoin Empire from following appellants' instructions to convert Quantum's debt to equity prior to the trial on the merits. Thus, we conclude that the order is compliant with Rule 683.

For these reasons, we overrule appellants' third issue.

## Conclusion

Having overruled appellants' issues, we affirm the trial court's order granting the temporary injunction against Empire.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   March 8, 2018

16